## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

**CHRISTA TAYLOR**,

    *Individually and as Representative of a Putative Class of Similarly Situated Individuals*,

    *Plaintiff*,

v.

**ROOT INSURANCE COMPANY**,

    *Defendant.*

Cause No. _22-cv-1328_

Hon. _____

**CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................1

II.     PARTIES ...........................................................................................................2

III.    JURISDICTION AND VENUE ..........................................................................3

IV.     FACTUAL ALLEGATIONS ..............................................................................5

        A.      Root's Form Automotive Insurance Policy Requires Root
                to Indemnify Insureds for the Sales Tax Benefit. ...................................5

        B.      Root Improperly Denies Indemnity for Sales Tax Benefit in
                Texas. .......................................................................................................7

        C.      Root Harmed Its Insureds by Wrongfully Withholding the
                Sales Tax Benefit. ....................................................................................8

V.      CLASS ALLEGATIONS ....................................................................................9

        A.      Class Definitions and Exclusions.............................................................9

        B.      The Class Satisfies the Requirements of Rules 23(a). ...........................10

        C.      The Putative Class Satisfies the Requirements of Rule
                23(b)(3). ..................................................................................................13

VI.     MISCELLANEOUS ALLEGATIONS ...........................................................15

VII.    CAUSES OF ACTION .....................................................................................16

VIII.   PRAYER FOR RELIEF....................................................................................18

IX.     JURY DEMAND ..............................................................................................19

1.      Plaintiff, Christa Taylor ("Plaintiff"), individually and as representative of a putative Class of similarly situated individuals, brings this Complaint for Damages against Defendant Root Insurance Company (hereinafter, "Root"). In support, Plaintiff states as follows:

## I.   INTRODUCTION

2.      Root is an insurance company that markets and sells automotive insurance written on standard form insurance policies (including Root's "Form 1 Policy"[1]) to insure property situated in Texas.

3.      Certain form policies Root uses in Texas (including but not necessarily limited to Root's Form 1 Policy) *expressly* obligate Root to pay its insureds the applicable sales tax in the event of a total loss of the insured vehicle. Plaintiff refers to these Root form policies that include the express sales tax obligation throughout as the "Texas Sales Tax Form Policies." For example, Root's Form 1 Policy (a Texas Sales Tax Form Policy) states as follows:

> **Payment of loss**
>
> We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:
>
> 1. You; or
> 2. The address shown in this policy.
>
> If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.
>
> If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.
>
> We may settle any loss with you or the owner or lienholder of the property.

*See* Plaintiff's Policy, attached hereto as Exhibit 1, at 19 (emphasis added).

---

[1] Root Insurance Company, Form 1, August 2017, with amendatory endorsements; *see also* Ex. 1 (Plaintiff's Policy) as example of Root's Form 1 Policy. On information and belief, Root has only used two principal policy forms in Texas: it used the only the Form 1 August 2017 policy for all automotive insureds in Texas until approximately February 2021.

When an insured vehicle is damaged in a loss covered under Root's Texas Sales Tax Form Policies, Root has the option to either (a) pay the insured the fair market value of the vehicle or (b) pay to repair and restore the vehicle to its pre-loss condition.

4.      When Root elects to indemnify its insureds for the fair market value of a total loss vehicle, the applicable tax rate is 6.25% as set by the Texas Tax Code.[2]

5.      The amount Root owes for sales tax under Root's Texas Sales Tax Form Policies corresponds to the Texas sales tax rate applied to the amount of the total loss[3] (*i.e.*, 6.25% of the total loss amount paid to the insured) (the vehicle's "Sales Tax Benefit").

6.      Root systematically ignores the plain language of its Texas Sales Tax Form Policies and deprives its insureds of the Sales Tax Benefit. Root thereby denies its insureds the full benefits of the insurance policy for which they contracted.

7.      Root treats all members of the putative class the same: Root denies payment of the Sales Tax Benefit. To that end, Plaintiff is a typical victim of Root's breach of contract. Plaintiff's claims show the wrongful act in action and typify the claims of the putative Class Plaintiff seeks to represent.

## II.      PARTIES

8.      Plaintiff Christa Taylor is a natural person residing in Tarrant County, Texas. At all relevant times, Plaintiff owned the Vehicle[4] in question, which Root insured under automotive policy no. VZXLVR (Plaintiff's "Policy" attached hereto as Exhibit 1).

9.      Defendant **Root Insurance Company** (hereinafter, "Root") is a for-profit corporation organized under the laws of Ohio with its principal place of business in Ohio. Root may be served with process through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201. Root bills itself as a technology company operating a

---

[2] *See* Texas Tax Code § 152.021 (Retail Sales Tax).

[3] Root Insurance Company, Form 1, August 2017 (*e.g.*, Ex. 1), at p. 19.

[4] Plaintiff purchased insurance coverage for a 2016 Honda CR-V with VIN number 2HKRM3H50GH565388 (Plaintiff's "Vehicle") from Root.

direct-to-consumer model of insurance products, which rely on usage or telemetric data from insureds' smartphones.[5]

### III.    JURISDICTION AND VENUE

10.    This Court may properly exercise jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a). This is a suit between citizens of different states, and the amount in controversy exceeds $75,000 (exclusive of interest and costs). This is a class action seeking monetary damages pursuant to Federal Rule of Civil Procedure 23.

11.    This Court may properly exercise jurisdiction over the parties to this action.

a)    Plaintiff is a citizen of the forum-state and consents to this Court's exercise of jurisdiction.

b)    Root has maintained sufficient minimum contacts with the forum, and this action arises out of and relates to those contacts, such that Root has subjected itself to the laws of the forum and may reasonably anticipate being hailed to suit here. Root is licensed to sell and write insurance in Texas, has sold numerous insurance policies to insureds (including Plaintiff) in Texas, and/or has adjusted numerous claims arising from Texas in Texas. Plaintiff's Policy (as well as that of all putative Class Members) was issued by Root, concerned property situated in Texas, and was performable in Texas. Root advertises in Texas and purposefully directs its insurance products to Texas residents (including Plaintiff). Root thereby targeted Plaintiff (as well as all other putative Class Members). This action concerns Plaintiff's Policy (and that of all putative Class Members), the coverage purported afforded under the Policy for a Vehicle situated in Texas, and Root's breach thereof in Texas.

---

[5] At no point in this Complaint does Plaintiff challenge (individually, on behalf of the putative Class, impliedly, or expressly) any rates Root charged for its insurance products or the mechanisms by which Root determined the rate charged to each insured. Plaintiff, individually and on behalf of the Class, disclaims any cause of action which the Court may deem to invoke the Filed Rate Doctrine.

c)      This Court's exercise of jurisdiction over the parties is reasonable; it does not offend traditional notions of fair play and substantial justice.

12.      Venue is proper in this District Pursuant to 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to this action occurred in this District by virtue of the fact that all policies Root sells and issues in this State are effectively sold through Root Lone Star Insurance Agency, Inc. ("RLSA") D/B/A Root Insurance Company, which is physically located on Bee Cave Parkway in Travis County, Texas. *See* 28 U.S.C. § 1391(b)(2).

13.      RLSA holds Root's resident managing general agency license in Texas and, thereby, Root's authority to sell insurance policies in Texas. RLSA is organized and operated as a mere tool and/or business conduit of Root. Root's authority to transact in the business of insurance in Texas is tied to solely to RLSA'S licensure and physical presence in Texas (specifically, in the Austin Division of the Western District of Texas); RLSA exists for the sole purpose of satisfying this requirement. Root controls all internal business operations and affairs of RLSA. Indeed, RLSA represents to the Texas Department of Insurance it is "doing business as" "Root" and "Root Insurance" and "Root Insurance Company." RLSA filed an assumed name certificate with the Texas Secretary of State on March 11, 2021. *See* Exhibit 2. Root and RLSA filed consolidated tax returns for Root's 2021 tax year.[6] RLSA's President is Alexander Timm; Timm serves as Root's CEO and co-founder. *See* Exhibit 2.

14.      In August 2021, Root commenced a "fronting arrangement" with an unaffiliated Texas county mutual insurance company, Redpoint County Mutual Insurance Company ("Redpoint"). Redpoint is based in the same physical office location as RLSA on Bee Cave

---

[6] *See* Root, Inc. Form 10-k, 2021 February 23, 2022, at 97, available at
https://www.sec.gov/ix?doc=/Archives/edgar/data/1788882/000162828022003524/root-20211231.htm (last visited Nov. 18, 2022).

Parkway in Travis County, Texas. RLSA holds the agency appointment for Redpoint. Christopher A. McClellan organized RLSA (under its predecessor name, Trusted General Agency, Inc.) on February 24, 2020. McClellan is also the president and CEO of Redpoint. McClellan filed the assumed name certificate on behalf of RLSA informing the State that RLSA and Root were effectively the same entity. *See* Exhibit 2.[7]

15.     Root is subject to the Court's proper exercise of jurisdiction over it. *See* 28 U.S.C. §§ 1391(b)(2); (b)(3); (c)(2); and (d).

## IV.     FACTUAL ALLEGATIONS

16.     Plaintiff, individually and as representative for other similarly situated policyholders, fully incorporates into this paragraph all allegations in the preceding paragraphs of this Complaint as if each were fully iterated herein.

**A.     Root's Form Automotive Insurance Policy Requires Root to Indemnify Insureds for the Sales Tax Benefit.**

17.     Root writes coverage in Texas using standardized form insurance policies (including but not limited to Root's "Form 1 Policy"; *see, e.g.*, Plaintiff's Policy, attached hereto as Exhibit 1). Root identifies its Form 1 Policy as "Form 1", dated August 2017. It includes certain amendatory endorsements, which attempt to comply with Texas law.

18.     Root's Texas form policies require it to indemnify its insureds for the "lesser of the: (1) actual cash value of the stolen or damaged property less the deductible; or (2) amount necessary to repair or replace the property with other property of the like kind and quality less the deductible."

---

[7] Pursuant to the Root/Redpoint fronting arrangement, Root states in its SEC filings that it routes all its new Texas auto policies and, over time, expects to route certain renewal auto policies, through Redpoint. In exchange for a commission paid to Redpoint, Root assumes 100% of the related premium and losses on those policies. Through this fronting arrangement, Root boasts a greater rating and underwriting flexibility that it believes will allow it to more accurately "segment risk in Texas to improve profitability." *See* Root, Inc. Form 10-k, 2021 February 23, 2022, at 63, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1788882/000162828022003524/root-20211231.htm (last visited Nov. 18, 2022).

*See, e.g.*, Exhibit 1 (Form 1, August 2017), at p. 18. The form policies specify Root calculates "actual cash value" using an "adjustment for depreciation and physical condition." *Id.*

19.     When an insured submits a claim to Root for loss of or damage to the insured's covered vehicle, Root may deem that vehicle to be a "total loss" under option 1 above. Root must then indemnify the insured for the value of the vehicle (*i.e.*, the actual cash value of the vehicle immediately prior to loss) and may take title to the vehicle in return.[8]

20.     Specific form policies Root uses in Texas (including but not limited to Root's Form 1 Policy) expressly obligate Root to indemnify its insured for the Sales Tax Benefit (Root's "Texas Sales Tax Form Policies"). For example, Root's Form 1 Policy states as follows:

> **Payment of loss**
>
> We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:
>
> 1. You; or
> 2. The address shown in this policy.
>
> If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.
>
> If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.
>
> We may settle any loss with you or the owner or lienholder of the property.

Exhibit 1, at p. 19 (emphasis added).

21.     The Sales Tax Benefit, which Root expressly owes under its Texas Sales Tax Form Policies (including Root's Form 1 Policy), is the Texas sales tax percentage (*i.e.*, 6.25%) applied to the actual cash value of the insured total loss vehicle immediately prior to loss.

22.     Plaintiff purchased insurance coverage for a 2016 Honda CR-V with VIN number 2HKRM3H50GH565388 (Plaintiff's "Vehicle") from Root.

---

[8] This is an alternative to paying for repairs made to the vehicle. If Root takes title to the total loss vehicle, Root usually resells the vehicle at auction to recoup the salvage value of the vehicle, pursuant to various state laws governing title and resale. Root thereby reduces its indemnity expenses by recouping the vehicle's salvage or junk value at resale.

23.     Plaintiff's Policy—Policy No. VZXLVR (Plaintiff's "Policy", attached hereto as Exhibit 1)—is a Root Form 1 Policy.

24.     Plaintiff's Policy was valid and in force from November 25, 2020 until May 25, 2021. The Policy was in force and effect at all relevant times hereto.

25.     As a Form 1 Policy, Plaintiff's Policy expressly sets forth Root's obligation to pay Plaintiff the Sales Tax Benefit in the event of loss:



**Payment of loss**

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1.   You; or
2.   The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

We may settle any loss with you or the owner or lienholder of the property.

Exhibit1 1, at p. 19.

26.     On approximately April 28, 2021, a hailstorm badly damaged Plaintiff's Vehicle. Plaintiff timely filed a claim with Root and complied with all conditions set forth in the Policy regarding conduct preceding and following a loss.

27.     Root determined the Vehicle to be a total loss under the Policy and elected to (a) pay Plaintiff for the actual cash value of the Vehicle immediately prior to the loss, and (b) take title to Plaintiff's Vehicle in return.

28.     The terms of the Policy obligated Root to indemnify Plaintiff for the fair market value of the Vehicle and the Sales Tax Benefit. Instead, Root failed to pay the Sales Tax Benefit.

**B.      Root Improperly Denies Indemnity for Sales Tax Benefit in Texas.**

29.     Root underpays its Texas insureds by refusing to indemnify them (including Plaintiff) for the Sales Tax Benefit. This is contrary to the terms of its Texas Sales Tax Form

Policies, and in direct contravention of Root's obligations. Root thereby pads its bottom line at the expense of its insureds, breaches the contract underlying its Texas Sales Tax Form Policies, and violates the law.

30.     Root offered Plaintiff $16,759.00 in settlement of her Claim. Plaintiff challenged this amount through the appraisal process set forth in the Policy. Plaintiff was awarded $22,750.00 in appraisal for the actual cash value of her Vehicle. This appraisal award amount did not include the Sales Tax Benefit. Root issued a check to Plaintiff in settlement of her Claim for $22,750.00, which Root represented to Plaintiff as full payment for Plaintiff's covered loss and Claim.

31.     Under Texas law and the express terms of Plaintiff's Policy, appraisal settles the amount of loss and determines the actual cash value of insured vehicle at issue.

32.     Under Texas law, sales tax is not part of actual cash value.

33.     Root failed to pay Plaintiff the Sales Tax Benefit of $1,421.88 (6.25% of $22,750). Root thereby shirked its contractual obligation and failed to fully indemnify Plaintiff.

**C.      Root Harmed Its Insureds by Wrongfully Withholding the Sales Tax Benefit.**

34.     On information and belief,

a)      Root has failed to pay the Sales Tax Benefit to thousands of insureds under Texas Sales Tax Form Policies;

b)      Root's average automotive insurance claim, in terms of actual cash value of the total loss vehicle, is approximately $20,000;

c)      Root has withheld an average of $1,250 in Sales Tax Benefit from ***each*** insured; and

d)      therefore, Root has unjustly profited by millions of dollars at the expense of its insureds under Texas Sales Tax Form Policies.

35.     Moreover, each putative class member  to whom Root failed to pay the Sales Tax Benefit is owed damages under the Texas Prompt Pay Statute, Tex. Ins. Code § 542.051, *et seq*.

36.     Root wrongfully withheld benefits rightfully owed to its insureds (*i.e.*, the Sales Tax Benefit) under its Texas Sales Tax Form Policies. Root denied Plaintiff any indemnity payments representing the Sales Tax Benefit for Plaintiff's Vehicle. Root thereby failed to fully indemnify Plaintiff as required by the Policy. Plaintiff is further owed damages under the Texas Prompt Pay Statute, Tex. Ins. Code § 542.051, *et seq*.

## V.     CLASS ALLEGATIONS

37.     Plaintiff, individually and as representative for other similarly situated policyholders, fully incorporates into this paragraph all allegations in the preceding paragraphs of this Complaint as if each were fully set forth herein.

38.     Plaintiff brings this lawsuit individually, and on behalf of all other persons similarly situated, pursuant to Fed. R. Civ. P. 23. As more fully discussed below, Plaintiff requests the Court certify a Class pursuant to Fed. R. Civ. P. 23(b)(3) for monetary damages.

### A.     Class Definitions and Exclusions

39.     Plaintiff seeks to certify a Class under Rule 23(b)(3) consisting of:

All Persons who, during the Class Period, (1) purchased a policy of automobile insurance from Root and were issued a Root Texas Sales Tax Form Policy; (2) suffered a total loss of an insured vehicle; and (3) received an indemnity payment from Root for such total loss that did not include sales tax.

"Class Period" means the period beginning four years prior to the date of the filing of this Complaint and continuing through the date that the Plaintiff files the Motion for Class Certification.

40.     Plaintiff excludes from the Class definition:

(1) Root; (2) all present or former officers and/or directors of Root; (3) Neutral Evaluators; (4) Class Counsel and their immediate family members; (5) any member of the Texas State and Federal Judiciary and their immediate family members; (6) Root's counsel of record and their immediate family members; (7) all

Persons who have a lawsuit pending against Root seeking to recover first-party benefits for a total loss involving a policy of automobile insurance; (8) all Persons who have executed a release agreement that releases the claims brought in this lawsuit; and (9) all Persons who make a timely election to be excluded from the Class.

**B.      The Class Satisfies the Requirements of Rules 23(a).**

41.      The Class satisfies all requirements of Fed. R. Civ. P. 23(a): the Class is sufficiently numerous and ascertainable to warrant certification, issues of law and fact are common to the Class, Plaintiff's claims are typical of the Class, and Plaintiff and Plaintiff's counsel are adequate representatives of the Class.

**1.      The Class Is Sufficiently Numerous and Ascertainable.**

42.      The Class consists of thousands of Root insureds, to whom Root issued a Texas Sales Tax Form Policy. The Class is sufficiently numerous to support certification. The Class is geographically dispersed across Texas. The joinder of so many individual claimants absent the class action mechanism is impractical; joining and naming each Class Member as a co-plaintiff is unreasonable and inefficient. Such a requirement would only result in Root's retention of monies it wrongfully failed to pay to its insureds. Rather, the disposition of those claims in a class action will provide substantial benefit to the parties and the court system.

43.      The identities of Class Members can be easily ascertained from Root's records, either manually or through computerized searches. Root prides itself on its technology, which relies heavily on its user data, so Root should be able to easily identify Class Members through simple queries to its database.

44.      Notwithstanding the size of the putative Class, the Class satisfies all requirements of commonality, typicality, and adequacy. Further, the Class satisfies the requirements of superiority and predominance. Therefore, this Court's certification of the Class is proper.

**2.      A Well-Defined Commonality of Interest in the Questions of Law and Fact Affects all Class Members.**

45.      There is a well-defined commonality of interest in the questions of law and fact that affect the Class. Root has subjected each Class Member—including Plaintiff—to the same, uniform failure to pay the Sales Tax Benefit: the wrongful denial of Sales Tax Benefit payments, which is a benefit owed under Root's Texas Sales Tax Form Policies. Each Class Member purchased automotive insurance from Root, and Root issued coverage on a Texas Sales Tax Form Policy for each Class Member. Each Class Member's policy expressly states sales tax is a benefit payable under the policy in the event of a covered total loss.

46.      The questions of law and fact common to the Class include, but are not limited to:

a)      Whether Class Members are entitled to indemnification of the Sales Tax Benefit in connection with a covered loss under its Texas Sales Tax Form Policies;

b)      Whether Root improperly failed to pay Class Members the Sales Tax Benefit in connection with a covered loss;

c)      Whether Class Members are entitled to money damages for Root's wrongful conduct; and

d)      Whether Root violated Texas' Prompt Payment of Claims Act by failing to provide payments for the Sales Tax Benefit when it issued its final indemnity payment to an insured in connection with the total loss of a covered automobile.

**3.      Plaintiff's Claims Are Typical of the Claims of the Putative Class.**

47.      Plaintiff's claims are typical of and precisely aligned with those of the putative Class. All Class Members seek relief under the same legal and remedial theories such that the claims asserted by Plaintiff are typical of the claims of Class.

48.     Root has subjected each Class Member—including Plaintiff—to the same, uniform practice: the wrongful denial of Sales Tax Benefit payments, which is a benefit owed under Root's Texas Sales Tax Form Policies. Each Class Member purchased automotive insurance from Root, and Root issued coverage on a Texas Sales Tax Form Policy for each Class Member. Each Class Member's policy expressly states sales tax is a benefit payable under the policy in the event of a covered total loss.

49.     Plaintiff's claims are typical of the Class's claims because all such claims arise from a series of identical business practices, or a common course of conduct, involving Root's continuing, systematic, and pervasive withholding of the Sales Tax Benefit.

50.     Liability and damages calculations will succeed or fail on the same facts and legal theories for Plaintiff and all Class Members.

51.     The calculation of damages owed to each Class Member—(a) the calculation of the Texas' sales tax percentage of 6.25% times the value of the Class Member's respective loss and (b) the calculation of the 18% interest under the Prompt Pay Act—does not negate class certification. In fact, class treatment of this matter is even more appropriate because there is a statutorily set value for the Sales Tax Benefit, which subjects damages for each Class Member to the same uniform and formulaic calculation.

### 4.     Plaintiff and Plaintiff's Counsel Are Adequate Representatives of the Putative Class.

52.     Plaintiff and Plaintiff's counsel will fairly and adequately represent the interests of the Class and protect the interests of all Class Members.

53.     Plaintiff is a member of the putative Class.

54. The Class Members' interests are coincident with and not antagonistic to Plaintiff's interests. Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all Class Members. Plaintiff can and will assist intelligently in litigation decision-making.

55. Plaintiff is represented by experienced and competent legal counsel who are well versed in class-based litigation and litigation of complex insurance issues. Putative Class counsel have no conflicts which would prevent their adequate, zealous representation of all Class Members.

**C.      The Putative Class Satisfies the Requirements of Rule 23(b)(3).**

56. The Class satisfies all requirements of Fed. R. Civ. P. 23(b)(3): questions of law and fact common to Class Members predominate over any questions affecting only individual Class Members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**1.      Common Questions of Law and Fact Predominate.**

57. Root's carried out its conduct in subjecting Plaintiff and Class Members to the same practice—including the withholding of full indemnity payments that included the Sales Tax Benefit in connection with the total loss of a vehicle—at all times through Root's policies and practices common to all Class Members. Consequently, common questions of law and fact will predominate over any questions of law or fact affecting only individual Class Members. Indeed, questions of law and fact common to the Class plainly predominate over any questions affecting only individual Class Members. These common questions include, but are not limited to, those set forth in Section V.B.2, *supra*, which Plaintiff incorporates as if fully set forth in this section.

**2.      The Class Action Mechanism Is Superior to Any Alternatives.**

58. The Fed. R. Civ. P. 23 class action mechanism is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, Class

Members will continue to suffer damages without adequate recourse; Root's wrongful practice will proceed without remedy; Root will continue to ignore its obligations under the law; and consumers will remain unaware of the violations of their rights and their potential avenues toward recovery.

59. Most individual Class Members have little ability to prosecute an individual action due to the complexity of issues involved in this litigation, the significant costs attendant to litigation on this scale, and the comparatively small, although significant, damages suffered by individual Class Members.

60. This action will result in an orderly and expeditious administration of the claims of individual Class Members. The class action mechanism will afford economies of time, effort, and expense, as well as uniformity of decisions to both Plaintiffs and Root. Repetitive litigation on behalf of individual claimants of the identical issues presented here would waste the resources of the courts, including this Court, and the parties to this action.

61. Neither this action, nor the putative Class proposed herein, presents any difficulty that would impede its management by the Court as a class action. Upon the adjudication of the dispute, the actual damages of each individual Class Member can be easily and adequately determined.

62. In further support of the superiority of adjudication of the claims of Class Members in one action, Plaintiff states:

a) The joinder of the thousands of geographically diverse individual Class Members is impracticable, cumbersome, and unduly burdensome;

b) There is no special interest by any individual Class Member in individually controlling the prosecution of separate actions;

c)      Class Members' individual claims may be relatively modest compared with the expense of litigating the claim, making it impracticable, unduly burdensome and expensive, if not practicably impossible, to justify individual Class Members from redressing their loss and/or preventing future losses;

d)      When Root's liability is adjudicated, claims of all Class Members can be determined by the Court and administered efficiently and in a manner less onerous and burdensome than if attempted through the filing of thousands of individual lawsuits;

e)      This Class Action will promote an orderly and expeditious adjudication and administration of class claims and promote economies of time, effort, and resources;

f)      Without this Class Action, no restitution, disgorgement, damages, or final equitable relief will be ordered, and Root will be unjustly enriched and permitted to continue reaping the benefits of the monies they retained (and will continue to retain) as a result of their wrongful and fraudulent conduct; and

g)      The resolution of this controversy through this Class Action presents fewer management difficulties than individually filed lawsuits and conserves the resources of the parties and the judicial system, while also protecting the rights of all Class Members.

## VI.    MISCELLANEOUS ALLEGATIONS

63.     Plaintiff, individually and as representative for other similarly situated policyholders, fully incorporates into this paragraph all allegations in the preceding paragraphs of this Complaint as if each were fully set forth and restated herein.

64.     Any condition precedent to the institution of this lawsuit has been performed, has occurred, or has been waived.

65.     By filing this lawsuit, Plaintiff neither intends to, nor in fact does, waive or release any right, claim, action, cause of action, or defense, nor does Plaintiff make any election of

remedies Plaintiff may or ever have, but rather, expressly reserves any such right, claim, action, cause of action, and/or defense.

66.     The filing of this class action tolls the applicable statute of limitations for any claims that can be asserted by the members of the putative Classes pursuant to *American Pipe Const. Co. v. Utah*, 414 US 538 (1974) and its progeny.

## VII.    CAUSES OF ACTION

67.     Plaintiff, individually and as representative for other similarly situated policyholders, fully incorporates into this paragraph all allegations in the preceding paragraphs of this Complaint as if each were fully set forth and restated herein

68.     Plaintiff sets forth the following causes of action:

| Count One | Breach of Contract |
|-----------|--------------------|
| Count Two | Violation of the Texas Prompt Payment of Claims Act |

## COUNT ONE
## Breach of Contract

69.     Plaintiff, individually and as representative for other similarly situated policyholders, fully incorporates into this paragraph all allegations in the preceding paragraphs of this Complaint as if each were fully iterated herein.

70.     Plaintiff entered into an insurance contract with Root to provide coverage for Plaintiff's Vehicle. This contract is memorialized in Plaintiff's Policy, which was in full force and effect at all material times hereto.

71.     Plaintiff provided proper and timely notice to Root of Plaintiff's Claim arising from damage to Plaintiff's Vehicle.

72.     In all material ways, Plaintiff complied with all terms and conditions of Plaintiff's Policy.

73.     Root breached its contractual obligations under the terms and conditions of the Policy with Plaintiff by failing to pay all benefits to which Plaintiff is entitled to under the Policy—namely, the payment of the Sales Tax Benefit on the Vehicle's value immediately prior to loss.

74.     As a result of Root's material breach of contract and other wrongful conduct, Plaintiff and the Class have sustained financial losses and were damaged in an amount to be determined at trial.

**COUNT TWO**
**Violations of the Texas Prompt Payment of Claims Act**
**(Tex. Ins. Code § 542.051, *et seq*.)**

75.     Plaintiff, individually and as representative for other similarly situated policyholders, fully incorporates into this paragraph all allegations in the preceding paragraphs of this Complaint as if each were fully set forth and restated herein.

76.     The Texas Insurance Code establishes firm and finite deadlines to facilitate the prompt payment of claims, through the Texas Prompt Payment of Claims Act ("Prompt Pay Act").

77.     Among other mandates, the Prompt Pay Act requires insurers to acknowledge receipt of a claim and commence any investigation of that claim within fifteen days after the insurer receives notice of the claim, or within thirty days if the insurer is an eligible surplus lines insurer. Tex. Ins. Code § 542.055. As part of this investigation, the insurer must request all items, statements, and forms the insurer requires from the claimant.

78.     Within fifteen days after the insurer receives all items, statements, and forms required by the insurer to secure a final proof of loss, the insurer must notify the claimant whether the insurer is accepting or rejecting the claim. *Id*. § 542.056.

79.     No later than five days after the insurer notifies the claimant that the insurer will pay the claim, the insurer must indeed issue payment of all amounts owed. *Id*. § 542.057.

80.     To comply with the Prompt Pay Act, an insurer must pay all amounts owed within the statutory window. Partial payment of only some amount owed before the statutory deadline does not relieve an insurer of liability under the Prompt Pay Act. *See Hinojos v. State Farm Lloyds*, 619 S.W.3d 651, 657-59 (Tex. 2021).

81.     By withholding indemnity payments for the Sales Tax Benefit, in express violation its own Form 1 Policy, Root has failed to pay all amounts owed to its claimants who submitted total loss auto claims within the Prompt Pay Act's requisite timeframe.

82.     Accordingly, Plaintiff and the Class have been harmed by Root's failure to fully indemnify Plaintiff and the Class in a prompt manner, as the Prompt Pay Act requires.

83.     Plaintiff and the Class are entitled to interest on all unpaid amounts as set forth in the Prompt Pay Act.

## VIII.    PRAYER FOR RELIEF

**COUNT ONE: Breach of Contract**

With respect to Count One, Plaintiff requests the Court enter judgment in favor of Plaintiff and the Class and award the following:

a)      the full amount owed under the Policy,

b)      pre-judgment interest;

c)      post-judgment interest;

d)      Plaintiffs' reasonable and necessary attorney's fees and costs; and

e)      all other relief the Court deems proper.

**COUNT TWO: Violations of the Texas Prompt Payment of Claims Act**

With respect to Count Two, Plaintiff requests the Court enter judgment in favor of Plaintiff and the Class and award the following:

a)      statutory interest on any amounts owed at the rate of 18% per year;

b)      Plaintiffs' reasonable and necessary attorney's fees and costs; and

c)      all other relief the Court deems proper.

## IX.    JURY DEMAND

84.    Plaintiff, individually and on behalf of the putative Class, demands trial by jury for all issues so triable.

Respectfully Submitted,

/s/ Scott Hendler

Scott Hendler, TX Bar No. 09445500
**HENDLER | FLORES LAW, PLLC**
901 S. MoPac Expressway, Bldg. 1, Suite #300
Austin, Texas 78746
512.439.3202
shendler@hendlerlaw.com

*– and –*

Michael B. Angelovich, TX Bar No. 00785666
Chad E. Ihrig, TX Bar No. 24084373
Bradley W. Beskin, TX Bar No. 24105463
**NIX PATTERSON, LLP**
8701 Bee Cave Road, Bldg. 1 (East), Suite 500
Austin, Texas 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335
mangelovich@nixlaw.com
cihrig@nixlaw.com
bbeskin@nixlaw.com

*– and –*

Richard E. Norman, Texas Bar No. 00788128
R. Martin Weber, Jr., Texas Bar No. 00791895
**CROWLEY NORMAN, LLP**
3 Riverway, Suite 1775
Houston, TX 77056
713.651.1771 office  713.651.1775 fax
rnorman@crowleynorman.com
mweber@crowleynorman.com

***ATTORNEYS FOR PLAINTIFF***
**JURY TRIAL DEMANDED**
**ATTORNEYS' LIEN CLAIMED**