*Taylor v. Root*
United States District Court
Western District of Texas

# EXHIBIT 1

Plaintiff's Policy



**Root Insurance Co.**
80 E Rich Street
Suite 500
Columbus, OH 43215
support@joinroot.com
(866) 980-9431

Policy number VZXLVR

# Auto insurance policy amended declarations

Your coverage begins on November 25, 2020 at 12:01am CST. It expires on May 25, 2021 at 12:01am CDT. This amended declaration reflects changes made to the policy effective May 16, 2021 at 9:18am CDT, and replaces all previous declarations issued under this policy number.

## Named insured

Christa Taylor
11512 Lauren Way
427
Fort Worth, TX 76244

## Vehicles

2016 Mazda CX-5 (JM3KE4DY3G0823606)
2016 Honda CR-V (2HKRM3H50GH565388)

## Drivers listed

Nicole Duffey

## Coverage premiums, limits and deductibles

The following coverages apply to all listed vehicles unless otherwise noted.

| | |
|---|---|
| **Bodily injury liability**<br>Premium: $320 | $30,000 each person<br>$60,000 each accident |
| **Property damage liability**<br>Premium: $405 | $25,000 each accident |
| **Rental**<br>Premium: $76 | $30 each day<br>$900 each accident |
| **Personal injury protection**<br>Premium: $70 | $2,500 each person |
| **Uninsured/underinsured motorist bodily injury**<br>Premium: $57 | $30,000 each person<br>$60,000 each accident |
| **Uninsured motorist property damage**<br>Premium: $52 | $25,000 each accident<br>$250 deductible. |

| | |
|---|---|
| **Comprehensive**<br>Premium: $390 | $500 deductible. Limit of actual cash value. |
| **Collision**<br>Premium: $543 | $1,000 deductible. Limit of actual cash value. |
| **Roadside assistance** | $100 each incident (up to 3 incidents) |
| **Installment fee** | Total: $5.00 |

## Policy Changes

### Endorsement
05/16/2021 09:18AM

- Vehicle added: 2016 Mazda CX-5 JM3KE4DY3G0823606
- Comprehensive: deductible changed from $250, to $500 for vehicle 2016 Honda CR-V
- Coverage rental added for vehicle 2016 Mazda CX-5: $900 per_occurrence
- Coverage comp added for vehicle 2016 Mazda CX-5: $500 deductible
- Coverage coll added for vehicle 2016 Mazda CX-5: $1000 deductible
- Coverage pip added: $2500 per_person
- Coverage umuim added: $30000 per_person $60000 per_occurrence
- Coverage umpd added: $250 deductible $25000 per_occurrence

### Endorsement
05/09/2021 05:04PM

- Vehicle removed: 2015 Honda Civic 19XFB4F24FE001396
- Coverage rental removed for vehicle 2015 Honda Civic: $900 per_occurrence
- Coverage comp removed for vehicle 2015 Honda Civic: $250 deductible
- Coverage coll removed for vehicle 2015 Honda Civic: $1000 deductible

### Endorsement
04/28/2021 09:17PM

- Comprehensive: deductible changed from $1000, to $250 for vehicle 2015 Honda Civic
- Comprehensive: deductible changed from $1000, to $250 for vehicle 2016 Honda CR-V

### Endorsement
04/28/2021 08:58PM

- Coverage rental added for vehicle 2015 Honda Civic: $900 per_occurrence
- Coverage rental added for vehicle 2016 Honda CR-V: $900 per_occurrence

### Endorsement
04/20/2021 08:05AM

- Vehicle removed: 2014 Honda CR-V 2HKRM3H78EH511254

- Vehicle added: 2016 Honda CR-V 2HKRM3H50GH565388
- Coverage comp removed for vehicle 2014 Honda CR-V: $1000 deductible
- Coverage coll removed for vehicle 2014 Honda CR-V: $1000 deductible
- Coverage comp added for vehicle 2016 Honda CR-V: $1000 deductible
- Coverage coll added for vehicle 2016 Honda CR-V: $1000 deductible

**Endorsement**

04/18/2021 01:41PM

- Vehicle removed: 2014 Hyundai Elantra KMHDH4AH0EU094267
- Coverage comp removed for vehicle 2014 Hyundai Elantra: $1000 deductible
- Coverage coll removed for vehicle 2014 Hyundai Elantra: $1000 deductible

**Endorsement**

04/15/2021 08:24AM

- Vehicle added: 2014 Hyundai Elantra KMHDH4AH0EU094267
- Coverage comp added for vehicle 2014 Hyundai Elantra: $1000 deductible
- Coverage coll added for vehicle 2014 Hyundai Elantra: $1000 deductible
- Coverage umuim removed: $30000 per_person $60000 per_occurrence
- Coverage umpd removed: $250 deductible $25000 per_occurrence

**Endorsement**

04/02/2021 06:09PM

- Vehicle removed: 2014 Hyundai Elantra KMHDH4AH0EU094267
- Driver removed: Julian Taylor
- Coverage comp removed for vehicle 2014 Hyundai Elantra: $1000 deductible
- Coverage coll removed for vehicle 2014 Hyundai Elantra: $1000 deductible

**Endorsement**

01/09/2021 09:35AM

- Vehicle added: 2014 Hyundai Elantra KMHDH4AH0EU094267
- Driver added: Julian Taylor
- Coverage comp added for vehicle 2014 Hyundai Elantra: $1000 deductible
- Coverage coll added for vehicle 2014 Hyundai Elantra: $1000 deductible

## Policy documents

Your insurance policy and any policy endorsements contain a full explanation of your coverage. These are available for review in your Root App or you may contact us for a copy. The policy contract is Form 1. You'll see the form number at the bottom of the pages in your contract. The contract is modified by forms 01, 02, 03, 3, 07, 7, 08, 09, 11, and 15, which you'll find included in your contract.

# Personal auto policy



## Agreement

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## Definitions

A.  Throughout this policy, "you" and "your" refer to:

    **1.** The "named insured" shown in the Declarations; and

    **2.** The spouse of a "named insured" if residing in the same household at the time of the loss.

B.  "We", "us" and "our" refer to the Company providing this insurance.

C.  "Motor vehicle" means a land motor vehicle designed for use principally on public roads.

D.  "Auto" means a "motor vehicle":

    **1.** Of the private passenger, pickup body, or cargo van type;

    **2.** With at least four wheels; and

    **3.** With a gross vehicle weight rating of 10,000 pounds or less, according to the manufacturer's specifications.

E.  For purposes of this policy, an "auto" shall be deemed to be owned by a person if leased:

    **1.** Under a written agreement to that person; and

    **2.** For a continuous period of at least 6 months.

    Other words and phrases are defined. They are in quotation marks when used.

F.  "Bodily injury" means bodily harm, sickness or disease, including death that results.

G.  "Business" includes trade, profession or occupation.

H.  "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

I.  "Occupying" means:

    **1.** In;

    **2.** Upon; or

    **3.** Getting in, on, out or off.

J.  "Property damage" means physical injury to, destruction of or loss of use of tangible property.

K.  "Trailer" means a non-motorized vehicle towed by another vehicle, including a farm wagon or farm implement, designed to be towed on public roads by an "auto" and not being used:

    **1.** For commercial purposes;

    **2.** As an office, store, or for display purposes; or

    **3.** As a passenger conveyance.

**L.**   "Your covered auto" means:

    **1.**   Any "auto" shown in the Declarations.

    **2.**   A "newly acquired auto".

    **3.**   Any "trailer" you own.

    **4.**   Any "auto" or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

        **a.**   Breakdown;

        **b.**   Repair;

        **c.**   Servicing;

        **d.**   Loss; or

        **e.**   Destruction.

    This Provision **(L.4.)** does not apply to Coverage For Damage To Your Auto.

**M.**   "Newly acquired auto":

    **1.**   "Newly acquired auto" means an "auto" you become the owner of during the policy period:

        **a.**   For which no other insurance policy provides coverage; and

        **b.**   Is not used for the delivery or transportation of goods and materials unless use is incidental to your "business" of installing, maintaining or repairing furnishings or equipment.

    **2.**   Coverage for a "newly acquired auto" is provided as described below. If you ask us to insure a "newly acquired auto" after a specified time period described below has elapsed, any coverage we provide for a "newly acquired auto" will begin at the time you request the coverage.

        **a.**   For any coverage provided in this policy except Coverage For Damage To Your Auto, a "newly acquired auto" will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner. However, for this coverage to apply to a "newly acquired auto" which is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 14 days after you become the owner.

        If a "newly acquired auto" replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

        **b.**   Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must:

            **(1)**   Ask us to insure it within 14 days of becoming the owner if the Declarations indicate that Collision Coverage applies to at least one "auto". In this case, the "newly acquired auto" will have the broadest coverage we now provide for any "auto" shown in the Declarations.

            **(2)**   Ask us to insure it as soon as you would like coverage to begin if the Declarations do not indicate that Collision Coverage applies to at least one "auto". You will have no Collision Coverage until you notify us of the "newly acquired auto".

        **c.**   Comprehensive Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must:

            **(1)**   Ask us to insure it within 14 days of you becoming the owner if the Declarations indicate that Comprehensive Coverage applies to at least one "auto". In this case, the "newly

acquired auto" will have the broadest coverage we now provide for any "auto" shown in the Declarations.

(2) Ask us to insure it as soon as you would like coverage to begin if the Declarations do not indicate that Comprehensive Coverage applies to at least one "auto". You will have no Comprehensive Coverage until you notify us of the "newly acquired auto".

# Part A – Liability coverage

## Insuring agreement

**A.** We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an "auto" accident. Damages include prejudgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

**B.** "Insured" as used in this Part means:

**1.** You or any "family member" for the ownership, maintenance or use of any "auto" or "trailer".

**2.** Any person using "your covered auto" who is not insured for liability coverage by any other insurance policy, self-insurance program, or financial responsibility bond with respect to a motor vehicle accident arising out of that person's use of "your covered auto" with permission of you or any "family member", and who is operating "your covered auto" within the scope of such permission.

**3.** For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

**4.** For any "auto" or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This Provision **(B.4.)** applies only if the person or organization does not own or hire the "auto" or "trailer".

## Supplementary payments

We will pay on behalf of an "insured":

**1.** Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

**2.** Premiums on appeal bonds and bonds to release attachments in any suit we defend.

**3.** Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

**4.** Up to $200 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

**5.** Other reasonable expenses incurred at our request.

These payments will not reduce the limit of liability.

## Exclusions

**A.**  We do not provide Liability Coverage for any "insured":

**1.**  Who intentionally causes "bodily injury" or "property damage" or who commits or directs any act intended or expected to cause any "bodily injury" and "property damage", even if the actual injury or damage is different than that which was intended or expected;

**2.**  For "property damage" to property owned or being transported by that "insured".

**3.**  For "property damage" to property:

   **a.**  Rented to;

   **b.**  Used by; or

   **c.**  In the care of;

   that "insured".

   This Exclusion **(A.3.)** does not apply to "property damage" to a residence or private garage.

**4.**  For "bodily injury" to an employee of that "insured" during the course of employment. This Exclusion **(A.4.)** does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

**5.**  For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used:

   **a.**  as a public or livery conveyance; or

   **b.**  for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food.

   This Exclusion **(A.5.)** does not apply to a share-the-expense car pool.

**6.**  While employed or otherwise engaged in the "business" of:

   **a.**  Selling;

   **b.**  Repairing;

   **c.**  Servicing;

   **d.**  Storing; or

   **e.**  Parking;

   vehicles designed for use mainly on public highways. This includes road testing and delivery. This Exclusion **(A.6.)** does not apply to the ownership, maintenance or use of "your covered auto" by:

   **a.**  You;

   **b.**  Any "family member"; or

   **c.**  Any partner, agent or employee of you or any "family member".

**7.**  Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" not described in Exclusion **A.6.**

   This Exclusion **(A.7.)** does not apply to the maintenance or use of a:

   **a.**  Private passenger auto;

   **b.**  Pickup or van; or

**c.** "Trailer" used with a vehicle described in a. or b. above.

**8.** Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion **(A.8.)** does not apply to a "family member" using "your covered auto" which is owned by you.

**9.** For "bodily injury" or "property damage" due to a nuclear reaction or radiation.

**10.** For "bodily injury" or "property damage" for which that "insured":

    **a.** Is an "insured" under a nuclear energy liability policy; or

    **b.** Would be an "insured" under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

    **a.** Nuclear Energy Liability Insurance Association;

    **b.** Mutual Atomic Energy Liability Underwriters; or

    **c.** Nuclear Insurance Association of Canada.

**11.** For any liability assumed under any contract or agreement by you or any "family member".

**12.** For any obligation for which the United States Government is liable under the Federal Tort Claims Act.

**13.** For "bodily injury" to you or any "family member". However, this exclusion does not apply to the death of you or any "family member" as a result of the "bodily injury".

**14.** For punitive or exemplary damages, or for attorney fees and litigation expenses awarded in connection with punitive or exemplary damages.

**15.** For "bodily injury" or "property damage" that are caused by, or reasonably expected to result from, a criminal act or omission of that "insured". This exclusion applies regardless of whether that "insured" is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

**16.** For any "bodily injury" or "property damage" that results from, or sustained during practice or preparation for, or competition in:

    **a.** Any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or

    **b.** Any driving activity conducted on a permanent or temporary racetrack or racecourse.

**B.** We do not provide Liability Coverage for the ownership, maintenance or use of:

**1.** Any vehicle which:

    **a.** Has fewer than four wheels; or

    **b.** Is designed mainly for use off public roads.

This Exclusion **(B.1.)** does not apply:

    **a.** While such vehicle is being used by an "insured" in a medical emergency;

    **b.** To any "trailer"; or

    **c.** To any non-owned golf cart.

**2.** Any vehicle, other than "your covered auto", which is:

    **a.** Owned by you; or

    **b.** Furnished or available for your regular use.

3.  Any vehicle, other than "your covered auto", which is:

    a.  Owned by any "family member"; or

    b.  Furnished or available for the regular use of any "family member".

    However, this Exclusion **(B.3.)** does not apply to you while you are maintaining or "occupying" any vehicle which is:

    a.  Owned by a "family member"; or

    b.  Furnished or available for the regular use of a "family member".

## Limit of liability

A.  The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one motor vehicle accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one motor vehicle accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one motor vehicle accident.

This is the most we will pay regardless of the number of:

1.  "Insureds";

2.  Claims made;

3.  Vehicles or premiums shown in the Declarations;

4.  Vehicles involved in the motor vehicle accident; or

5.  Lawsuits brought.

B.  No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1.  Part **B** or Part **C** of this policy; or

2.  Any Underinsured Motorists Coverage provided by this policy.

C.  Should multiple auto policies issued by us to you be in effect, no more than the highest limit of liability for this coverage available under any one policy will be paid.

D.  An "auto" and attached "trailer" are considered "your covered auto". Therefore, limits of liability will not be increased for an accident involving an "auto" that has an attached "trailer".

## Out of state coverage

If a motor vehicle accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A.  If the state or province has:

1.  A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

    **2.** A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

**B.** No one will be entitled to duplicate payments for the same elements of loss.

## Financial responsibility

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## Other insurance

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any other collectible insurance.

# Part B – Medical payments coverage

## Insuring agreement

**A.** We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury":

    **1.** Caused by a motor vehicle accident; and

    **2.** Sustained by an "insured".

    We will pay only those expenses incurred for services rendered within 3 years from the date of the accident. It will be determined by us or someone on our behalf:

        **a.** Whether the expenses for "medical services" are reasonable; and

        **b.** Whether the "medical services" are necessary.

**B.** "Insured" as used in this Part means:

    **1.** You or any "family member":

        **a.** While "occupying"; or

        **b.** As a pedestrian when struck by;

        a "motor vehicle" or "trailer" of any type.

    **2.** Any other person while "occupying" "your covered auto".

## Additional definitions

**A.** "Medical services" means medical, surgical, dental, x-ray, ambulance, hospital, professional nursing, and funeral services, and includes the cost of eyeglasses, hearing aids, pharmaceuticals, orthopedics, and prosthetic devices.

## Exclusions

We do not provide Medical Payments Coverage for "bodily injury":

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.

2. Sustained while "occupying" "your covered auto" when it is being used:

   a. as a public or livery conveyance; or

   b. for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food.

   This Exclusion **(2.)** does not apply to a share-the-expense car pool.

3. Sustained while "occupying" any vehicle located for use as a residence or premises.

4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury".

5. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

   a. Owned by any "family member"; or

   b. Furnished or available for the regular use of any "family member".

   However, this Exclusion **(6.)** does not apply to you.

6. Sustained while "occupying" a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion **(7.)** does not apply to a "family member" using "your covered auto" which is owned by you.

7. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured". This Exclusion **(8.)** does not apply to "bodily injury" sustained while "occupying" a:

   a. Private passenger auto;

   b. Pickup or van; or

   c. "Trailer" used with a vehicle described in a. or b. above.

8. Caused by or as a consequence of:

   a. Discharge of a nuclear weapon (even if accidental);

   b. War (declared or undeclared);

   c. Civil war;

   d. Insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts; or

   e. Warlike action by any military force of any government, sovereign or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack.

9. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

   a. Nuclear reaction;

   b. Radiation; or

   c. Radioactive contamination.

**10.** To any person that is a result from, or sustained during practice or preparation for, or competition in:

    **a.** any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or

    **b.** any driving activity conducted on a permanent or temporary racetrack or racecourse.

**11.** For which insurance:

    **a.** under a nuclear energy liability insurance contract is afforded; or

    **b.** would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability.

**12.** For which, under the Federal Tort Claims Act, the United States Government is liable.

**13.** Caused directly or indirectly by:

    **a.** any accidental or intentional dispersal, discharge or release of radioactive, nuclear, pathogenic, or poisonous biological material; or

    **b.** any intentional dispersal, discharge or release of chemical or hazardous material for any purpose other than its safe and useful purpose.

**14.** Caused by, or reasonably expected to result from, a criminal act or omission of an "insured". This exclusion applies regardless of whether the "insured" is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations.

## Limit of liability

**A.** The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

    **1.** "Insureds";

    **2.** Claims made;

    **3.** Vehicles or premiums shown in the Declarations;

    **4.** Vehicles involved in the accident; or

    **5.** Lawsuits brought.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

    **1.** Part **A** or Part **C** of this policy; or

    **2.** Any Underinsured Motorists Coverage provided by this policy.

**C.** Should multiple auto policies issued to you by us be in effect, we will pay no more than the highest limit of liability for this coverage available under any one policy.

## Unreasonable or unnecessary medical expenses

If an "insured" incurs expenses for "medical services" that we deem to be unreasonable or unnecessary, we may refuse to pay for those expenses and contest them.

If the medical service provider sues the "insured" because we refuse to pay expenses for "medical services" that we deem to be unreasonable or unnecessary, we will pay any resulting defense costs, and any resulting

judgment against the "insured", subject to the limit of liability for this coverage. We will choose the counsel. We will also pay reasonable expenses, including loss of earnings up to $200 per day, incurred at our request.

The "insured" may not sue us for expenses for "medical services" that we deem to be unreasonable or unnecessary unless the "insured" paid the entire disputed amount to the medical service provider or the medical services provider has initiated collection activity against the "insured" for the unreasonable or unnecessary expenses.

### Other insurance

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

# Part C – Uninsured motorists coverage

## Insuring agreement

**A.**  We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

  **1.**  Sustained by an "insured"; and

  **2.**  Caused by an accident.

  The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

  Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

**B.**  "Insured" as used in this Part means:

  **1.**  You or any "family member".

  **2.**  Any other person "occupying" "your covered auto" who is not insured for Uninsured Motorist Bodily Injury or similar coverage by any other insurance policy.

  **3.**  Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in **1.** or **2.** above.

**C.**  "Uninsured motor vehicle" means a "motor vehicle" or "trailer" of any type:

  **1.**  To which no bodily injury liability bond or policy applies at the time of the accident.

  **2.**  To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

  **3.**  Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

    **a.**  You or any "family member";

    **b.**  A vehicle which you or any "family member" are "occupying"; or

    **c.**   "Your covered auto"

But only if:

    **a.**   The "insured" or someone on his or her behalf, reports the accident to the police or civil authority within 24 hours or as soon as practicable after the accident; and

    **b.**   Independent corroborative evidence exists to prove that the "bodily injury" to the "insured" was proximately caused by the unidentified operator of the "motor vehicle". The testimony of an "insured" seeking recovery from us shall not constitute independent corroborative evidence, unless the testimony is supported by additional evidence.

**4.**   To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

    **a.**   Denies coverage; or

    **b.**   Is or becomes insolvent.

**5.**   Which is owned or operated by someone with diplomatic immunity.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

**1.**   Owned by or furnished or available for the regular use of you or any "family member"; or

**2.**   Owned or operated by a self-insurer under any applicable "motor vehicle" law, except a self-insurer which is or becomes insolvent; or

**3.**   Owned by any governmental unit or agency; or

**4.**   Operated on rails or crawler treads; or

**5.**   Designed mainly for use off public roads while not on public roads; or

**6.**   While located for use as a residence or premises.

## Exclusions

**A.**  We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

**1.**   By an "insured" while "occupying", or when struck by, any "motor vehicle" owned by, furnished to, or available for the regular use of that "insured" which is not insured for this coverage under this policy. This includes a "trailer" of any type used with that vehicle.

**2.**   By any "family member" while "occupying", or when struck by, any "motor vehicle" you own which is insured for this coverage on a primary basis under any other policy.

**B.**  We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured":

**1.**   If that "insured" or the legal representative settles the "bodily injury" claim and such settlement prejudices our right to recover payment.

**2.**   While "occupying" "your covered auto" when it is being used:

    **a.**   as a public or livery conveyance; or

    **b.**   for retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food.

This Exclusion **(B.2.)** does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion **(B.3.)** does not apply to a "family member" using "your covered auto" which is owned by you.

4. While operating a motorized vehicle if that person's driver's license has been revoked, suspended, or never issued, unless the person is listed as a driver on your policy;

5. If the "bodily injury" is caused by a "motor vehicle" operated by any person who is specifically excluded for "bodily injury" liability coverage under this policy:

   **a.** due to any exclusion or provision of this; or

   **b.** due to designation as an excluded driver .

6. Who is an employee, officer, director, partner, trustee, member, executor, administrator, or beneficiary, of you or any "family member" if that person sustains "bodily injury" while operating or "occupying" a motorized vehicle other than "your covered auto";

7. When the person actually suffering the "bodily injury" is not an "insured" under this Part C.

**C.** This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

**D.** We do not provide Uninsured Motorists Coverage for punitive or exemplary damages, or for attorney fees and litigation expenses awarded in connection with punitive or exemplary damages.

## Limit of liability

**A.** The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services, emotional injury or mental anguish resulting from the "bodily injury" of another or from witnessing the "bodily injury" to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations;

4. Vehicles involved in the accident;

5. Lawsuits brought; or

6. Policies issued by us.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part **A** or Part **B** of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

**C.** We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

**D.** We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any Disability benefits law or similar law. This Limit of Liability (D) does not apply to any Workers' compensation law.

**E.** If multiple auto policies issued to you by us are in effect, no more than the highest limit of liability for this coverage available under any one policy will be paid.

## Other insurance

All stacking of Uninsured Motorist Bodily Injury insurance is precluded.

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:

**1.** Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

**2.** Any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any collectible insurance.

**3.** If the coverage under this policy is provided:

**a.** On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

**b.** On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis. Any insurance we provide with respect to an "insured" other than you or a "family member" shall be excess over any other uninsured motorist coverage.

## Arbitration

**A.** If we and an "insured" do not agree:

**1.** Whether that "insured" is legally entitled to recover damages; or

**2.** As to the amount of damages which are recoverable by that "insured";

from the owner or operator of an "uninsured motor vehicle", then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration prior to the expiration of the bodily injury statute of limitations. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

**B.** Each party will:

**1.** Pay the expenses it incurs; and

**2.** Bear the expenses of the third arbitrator equally.

**C.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding as to:

**1.** Whether the "insured" is legally entitled to recover damages; and

**2.** The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

# Part D – Coverage for damage to your auto

## Insuring agreement

**A.** We will pay for sudden, direct and accidental loss to "your covered auto" or any "non-owned auto", including their "custom parts or equipment", minus any applicable deductible shown in the Declarations. If loss to more than one "your covered auto" or "non-owned auto" results from the same "collision", only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

**1.** Other than "collision" only if the Declarations indicate that Comprehensive Coverage is provided for that "auto".

**2.** "Collision" only if the Declarations indicate that Collision Coverage is provided for that "auto".

If there is a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

**B.** "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision":

**1.** Missiles or falling objects;

**2.** Fire;

**3.** Theft or larceny;

**4.** Explosion or earthquake;

**5.** Windstorm;

**6.** Hail, water or flood;

**7.** Malicious mischief or vandalism;

**8.** Riot or civil commotion;

**9.** Contact with bird or animal; or

**10.** Breakage of glass.

If breakage of glass is caused by a "collision", you may elect to have it considered a loss caused by "collision".

**C.** "Non-owned auto" means:

1. Any "auto" or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

2. Any "auto" or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. Loss; or

   e. Destruction.

D. "Custom parts or equipment" means equipment, devices, accessories, enhancements and changes, other than those that are offered by that manufacturer specifically for that "auto" model, or that are installed by the auto dealership as part of the original sale of a new "auto", that:

   1. Have been permanently installed or attached; and

   2. Alter the appearance or performance of the "auto".


## Transportation Expenses

A. In addition, we will pay for:

   1. Temporary transportation expenses incurred by you if "your covered auto" is stolen; and

   2. Loss of use damages that you are legally liable to pay if a "non-owned auto" is stolen.

B. A combined maximum of $600, not exceeding $20 per day, will apply to these additional benefits. The additional benefit of transportation expenses will not apply if you purchased Rental Reimbursement Coverage for "your covered auto" when stolen.

C. Coverage for transportation expenses and loss of use damages begins 48 hours after you report the theft to us and ends the earliest of:

   1. when the "auto" had been recovered and returned to you or its owner;

   2. when the "auto" had been recovered and repaired;

   3. when the "auto" has been replaced; or

   4. 72 hours after we make an offer to settle the loss if the "auto" is deemed by us to be a total loss.

D. We must receive written proof of transportation expenses and loss of use damages.


## Exclusions

We will not pay for:

   1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used:

      a. As a public or livery conveyance; or

      b. For retail or wholesale delivery, including but not limited to, the pickup, transport, or delivery of magazines, newspapers, mail or food.

   This Exclusion **(1.)** does not apply to a share-the-expense car pool.

2. Damage due and confined to:

   **a.** Wear and tear;

   **b.** Freezing;

   **c.** Mechanical or electrical breakdown or failure; or

   **d.** Road damage to tires.

   This Exclusion **(2.)** does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto".

3. Loss due to or as a consequence of:

   **a.** Radioactive contamination;

   **b.** Discharge of any nuclear weapon (even if accidental);

   **c.** War (declared or undeclared);

   **d.** Civil war;

   **e.** Warlike action by any military force of any government, sovereign, or other authority using military personnel or agents. Any action taken to hinder or defend against an actual or expected attack is included in this definition.

   **f.** Any action taken by governmental authority to hinder or defend against any of these acts including insurrection, rebellion, revolution, and usurped power.

4. Loss to portable equipment, devices, accessories, and any other personal effects that are not permanently installed in "your covered auto" or any "non-owned" auto. This includes, but is not limited to:

   **a.** Radios and stereos, tape decks, compact disc systems, and navigation systems;

   **b.** Tapes, compact discs, cassettes, DVDs, and other recording or recorded media;

   **c.** Any case or other container designed for use in storing or carrying tapes, compact discs, cassettes, DVDs, or other recording or recorded media;

   **d.** CB radios, telephones, two-way mobile radios, DVD players, personal computers, personal digital assistants, or televisions.

5. Loss to any vehicle for which insurance:

   **a.** Under a nuclear energy liability insurance contract is afforded; or

   **b.** Would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limits of liability.

6. A total loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities.

   This Exclusion **(6.)** does not apply to the interests of Loss Payees in "your covered auto".

7. Loss to:

   **a.** A "trailer", camper body, or motor home, which is not shown in the Declarations; or

   **b.** Facilities or equipment used with such "trailer", camper body or motor home. Facilities or equipment include but are not limited to:

      **(1)** Cooking, dining, plumbing or refrigeration facilities;

    **(2)** Awnings or cabanas; or

    **(3)** Any other facilities or equipment used with a "trailer", camper body, or motor home.

This Exclusion **(7.)** does not apply to a:

**a.** "Trailer", and its facilities or equipment, which you do not own; or

**b.** "Trailer", camper body, or the facilities or equipment in or attached to the "trailer" or camper body, which you:

    **(1)** Acquire during the policy period; and

    **(2)** Ask us to insure within 14 days after you become the owner.

**8.** Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

**9.** Loss to equipment designed or used for the detection or location of radar or laser.

**10.** Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

**a.** Special carpeting or insulation;

**b.** Furniture or bars;

**c.** Height-extending roofs; or

**d.** Custom murals, paintings or other decals or graphics.

This Exclusion **(10.)** does not apply to a cap, cover or bedliner in or upon any "your covered auto" which is a pickup.

**11.** Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

**a.** Selling;

**b.** Repairing;

**c.** Servicing;

**d.** Storing; or

**e.** Parking;

vehicles designed for use on public highways. This includes road testing and delivery.

**12.** Loss to "your covered auto" or any "non-owned auto", resulting from, or sustained during practice or preparation for or competition in:

**a.** Any pre-arranged or organized racing, stunting, speed or demolition contest or activity; or

**b.** any driving activity conducted on a permanent or temporary racetrack or racecourse.

**13.** Loss to, or loss of use of, a "non-owned auto" rented by:

**a.** You; or

**b.** Any "family member";

if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member", pursuant to the provisions of any applicable rental agreement or state law.

14. Loss to any vehicle caused by an intentional act committed by or at the direction of you or a "family member" or the owner of a "non-owned auto", even if the actual damage is different than that which was intended or expected.

15. Loss to any vehicle for diminution of value.

16. To any vehicle caused directly or indirectly by:

    a. any accidental or intentional dispersal, discharge or release of radioactive, nuclear, pathogenic or poisonous biological material; or

    b. any intentional dispersal, discharge or release of chemical or hazardous material of any purpose other than its safe and useful purpose.

17. To any vehicle caused by, or reasonably expected to result from, a criminal act or omission of you or a "family member" or the owner of the "non-owned auto". This exclusion applies regardless of whether you or the "family member" or the owner of the "non-owned auto" is actually charged with, or convicted of, a crime. For purpose of this exclusion, criminal acts or omissions do not include traffic violations.

## Limit of liability

A. Our limit of liability for loss will be the lesser of the:

    1. Actual cash value of the stolen or damaged property less the deductible; or

    2. Amount necessary to repair or replace the property with other property of like kind and quality less the deductible.

    However, the most we will pay for loss to:

    1. Any "non-owned auto" which is a "trailer" is $500.

    2. "Custom parts or equipment" is $1,000 unless you purchased Additional Custom Parts or Equipment Coverage ("ACPE"). If you purchased ACPE, the most we will pay is $1000 plus the amount of ACPE you purchased.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

D. Coverage for "custom parts or equipment" will not cause our limit of liability for loss to an "auto" under this **Part D**-Coverage for damage to your auto to be increased to an amount in excess of the actual cash value of the "auto", including its "custom parts or equipment".

E. In determining the amount necessary to repair damaged property to its pre-loss condition, the amount to be paid by us:

    1. Will not exceed the amount to repair based on prevailing competitive labor rates charged in the area where the property is to be repaired and the cost of repair or replacement parts and equipment, as determined by us; and

    2. Will be based on the cost of repair of replacement parts and equipment which may be new, remanufactured, reconditioned, or used, including, but not limited to:

        a. original manufacturer parts or equipment; and

     **b.**  non-original manufacturer parts or equipment.

**F.** To determine the amount necessary to replace or repair the damaged property as referred to in subsection **A.2.**, the total cost of necessary repair or replacement may be reduced by unrepaired prior damage. Unrepaired prior damage includes cracked, broken or missing parts; rust; dents; scrapes; gouges; and peeling paint. The reduction for unrepaired prior damage is the cost of labor, parts and materials necessary to repair or replace damage, defects, deterioration, or wear and tear on exterior body parts, windshields and other glass, wheels, and paint, that existed prior to the accident and that is eliminated as result of the repair or replacement of property damaged in the loss.

**G.** To determine the amount necessary to repair or replace the damaged property as referred to in **A.2.**, an adjustment may be made for betterment or depreciation and physical condition on:

    **1.**  Batteries;

    **2.**  Tires;

    **3.**  Engines and transmissions, if the engine has greater than 80,000 miles; and

    **4.**  Any other mechanical parts that are inoperative or nonfunctioning.

    We will not make an adjustment for the labor costs associated with the repair or replacement of these parts.

**H.** The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs.

**I.** Duplicate recovery for the same elements of damages is not permitted.

**J.** No deductible will apply to a loss to window glass when the glass is repaired instead of replaced.

## Payment of loss

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

    **1.**  You; or

    **2.**  The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

We may settle any loss with you or the owner or lienholder of the property.

## No benefit to bailee

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## Loss payable clause

Payment under this Part D for a loss to "your covered auto" will be made according to your interest and the interest of any lienholder shown on the declarations page or designated by you. At our option, payment

may be made to both jointly, or to either separately. However, if "your covered auto" is not a total loss, we may make payment to you and the repairer of the "auto".

The lienholder's interest will not be protected:

1. Where fraud, misrepresentation, material omission, or intentional damage resulting in a denial of coverage by us has been committed by or at the direction of you or any person seeking coverage; or

2. Where the loss is otherwise not covered under the terms of this policy.

If this policy is cancelled, voided, or non-renewed, the interest of any lienholder under this agreement will also terminate.

## Other sources of recovery

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the "non-owned auto";

2. Any other applicable physical damage insurance;

3. Any other source of recovery applicable to the loss.

## Appraisal

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

# Part E – Duties after an accident or loss

We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of all persons involved and of any witnesses, as well as the license plate numbers of the vehicles involved.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Within 24 hours, send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:

   a. To physical exams by physicians we select. We will pay for these exams.

   b. To examination under oath and subscribe the same.

4. Authorize us to obtain:

   a. Medical reports; and

   b. Other pertinent records.

5. Submit a proof of loss when required by us.

C. A person seeking Uninsured Motorists Coverage must also:

   1. Within 24 hours, notify the police if a hit-and-run driver is involved.

   2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage For Damage To Your Auto must also:

   1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy.

   2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

   3. Permit us to inspect and appraise the damaged property before its repair or disposal.

# Part F – General provisions

## Bankruptcy

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

## Changes

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. You agree to cooperate with us in determining if this information is correct and complete, and notify us promptly if it changes during the policy period. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

   1. The number, type or use classification of "your covered autos";

   2. Operators using insured vehicles;

   3. The place of principal garaging of "your covered autos";

   4. Coverage, deductible or limits;

   5. Operators of legal driving age residing in your household;

   6. An operator's marital status;

   7. Your mailing address and your residence address;

   8. Rating territory or discount eligibility.

If a change resulting from **A.** or **B.** requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

**C.**  If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This Paragraph **(C.)** does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

  **1.**  A subsequent edition of your policy; or

  **2.**  An Amendatory Endorsement.

**D.**  If you ask us to delete a vehicle from this policy, coverage will not apply to that vehicle as of that date and time you ask us to delete it.

## Duty to report changes

You must report to us all changes promptly, including any additions and deletions, in policy information. Further, you must report to us certain changes no later than 30 days after the change occurs. These are changes to:

  **1.**  Your mailing address or your residence address;

  **2.**  The principal garaging address of "your covered auto";

  **3.**  The persons of legal driving age residing in your household;

  **4.**  The persons who regularly operate "your covered auto";

  **5.**  An operator's marital status; or

  **6.**  The driver's license or operator's permit status of you or a "family member".

Your failure to comply with this duty as described above, where material to the risk of loss, may result in our denial of coverage for a claim.

## Settlement of claims

Estimating, appraisal, or injury evaluation systems may be used to assist us in adjusting claims under this policy and to assist us in determining the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by us or a third party and may include computer software, databases, and specialized technology.

## Fraud

This policy was issued in reliance upon the information provided on your insurance application. Material information provided on your insurance application includes, but is not limited to, the following information: license and driving history of you, relatives, and all persons of driving age residing in your household; the description of the vehicles to be insured; the location of the principal place of garaging; and your place of residence. At any time, we may void this policy, including after the occurrence of an accident or loss, if you are found to have:

  **1.**  Made incorrect statements or representations to us with regard to any material fact or circumstance;

    **2.**   Concealed or misrepresented any material fact or circumstance; or

    **3.**   Engaged in fraudulent conduct;

at the time of application. This means that we will not be liable for any claims or damages that would be covered otherwise.

Any changes we make at your request to this policy after inception will be made in reliance upon information you provide. If you:

    **1.**   Make incorrect statements or representations to us with regard to any material fact or circumstance;

    **2.**   Conceal or misrepresent any material fact or circumstance; or

    **3.**   Engage in fraudulent conduct;

in connection with a requested change we may void the policy or reform it as it existed immediately prior to the requested change. We may do this at any time, including after the occurrence of an accident or loss.

However, this shall not affect coverage under **Part A – Liability Coverage** of this policy up to the minimum required limits by the financial responsibility law in your state for an accident that occurs before we notify the "named insured" that the policy is void. If we void this policy, you must reimburse us if we make any payment.

If we void this policy, it will be void from its inception (void ab initio), as if the policy never took effect.

When we have not voided or reformed the policy, we may still deny coverage for an accident or loss if you, in connection with the policy application, in connection with any requested change, or at any time during the policy period, have concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct and that concealment, misrepresentation, or fraudulent conduct was material to a risk assumed by us.

We may deny coverage for an accident or loss if you or a person seeking coverage has concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

## Payment of premium and fees

If your initial premium payment is by check, draft, electronic funds transfer, or similar form of remittance, coverage under this policy is conditioned upon payment to us by the financial institution. If the financial institution upon presentment does not honor the check, draft, electronic funds transfer, or similar form of remittance, this policy may, at our option, be deemed void from its inception (void ab initio), as though the policy never took effect. This means we will not be liable under this policy for any claims or damages that would otherwise be covered if the check, draft, electronic funds transfer, or similar form of remittance had been honored by the financial institution. Any action by us to present the remittance for payment on more than one occasion shall not affect our right to void this policy.

Fees may be charged on your policy in addition to premium. We may charge fees for installment payments, late payments, and other transactions. Payments made on your policy will be applied first to fees, then to premium due.

## Legal action against us

**A.**   No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part **A**, no legal action may be brought against us until:

    **1.** We agree in writing that the "insured" has an obligation to pay; or

    **2.** The amount of that obligation has been finally determined by judgment after trial.

**B.** No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

## Our right to recover payment

**A.** If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

    **1.** Whatever is necessary to enable us to exercise our rights; and

    **2.** Nothing after loss to prejudice them.

However, our rights in this Paragraph **(A.)** do not apply under Part **D**, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

**B.** If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

    **1.** Hold in trust for us the proceeds of the recovery; and

    **2.** Reimburse us to the extent of our payment.

**C.** If we elect to exercise our rights of recovery against another, we will also attempt to recover any deductible incurred by an "insured" under this policy unless we are specifically instructed by that person to not pursue the deductible. We have no obligation to pursue recovery against another for any loss not covered by this policy.

**D.** We reserve the right to settle or compromise the deductible and "property damage" claims against the responsible parties for less than the full amount. We also reserve the right to incur reasonable expenses and attorney fees in pursuit of the recovery.

**E.** If the total recovery is less than the total of our payment and the deductible, we will reduce reimbursement of the deductible based on the proportion that the actual recovery bears to the total of our payment as well as the deductible. A proportionate share of collection expenses and attorney fees incurred with respect to these recovery efforts will also reduce reimbursement of the deductible.

These provisions will be applied in accordance with state law.

## Policy period and territory

**A.** This policy applies only to accidents and losses which occur:

    **1.** During the policy period as shown in the Declarations; and

    **2.** Within the policy territory.

**B.** The policy territory is:

    **1.** The United States of America, its territories or possessions;

    **2.** Puerto Rico; or

    **3.** Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## Termination

A.  Cancellation

This policy may be cancelled during the policy period as follows:

1.  The named insured shown in the Declarations may cancel by:

    a.  Returning this policy to us; or

    b.  Giving us advance written notice of the date cancellation is to take effect.

2.  We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

    a.  At least 10 days notice:

        (1)  If cancellation is for nonpayment of premium; or

        (2)  If notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

    b.  At least 20 days notice in all other cases.

3.  After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

    a.  For nonpayment of premium; or

    b.  If your driver's license or that of:

        (1)  Any driver who lives with you; or

        (2)  Any driver who customarily uses "your covered auto";

        has been suspended or revoked. This must have occurred:

        (1)  During the policy period; or

        (2)  Since the last anniversary of the original effective date if the policy period is other than 1 year; or

    c.   If the policy was obtained through material misrepresentation.

B.  Nonrenewal

If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. Subject to this notice requirement, if the policy period is:

1.  Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

2.  6 months or longer, but less than one year, we will have the right not to renew or continue this policy at the end of the policy period.

3.  1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

C.  Automatic Termination

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

D.  Other Termination Provisions

1.  We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2.  If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3.  The effective date of cancellation stated in the notice shall become the end of the policy period

## Transfer of your interest in this policy

**A.**  Your rights and duties under this policy may not be assigned without our written consent. However, if a "named insured" shown in the Declarations dies, coverage will be provided for:

**1.**  The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a "named insured" shown in the Declarations; and

**2.**  The legal representative of the deceased person as if a "named insured" shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto".

**B.**  Coverage will only be provided until the end of the policy period.

## Joint and individual interests

If there is more than one "named insured" on this policy, any "named insured" may cancel or change this policy. The action of one "named insured" will be binding on all persons for whom coverage is provided under this policy.

## Two or more auto policies

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.



# Advisory Notice To Policyholders Regarding Ride-Sharing

This is a Notice regarding your Personal Auto Policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this summary, **THE PROVISIONS OF YOUR PERSONAL AUTO POLICY SHALL PREVAIL.**

This Notice provides information concerning ride-sharing arrangements through Transportation Network Companies (TNCs) and the potential insurance implications for TNC drivers.

TNCs typically offer a ride-sharing service which uses smart-phone applications and other Internet-based platforms to connect passengers with drivers who use personal autos to provide transportation services for a fee.

Your policy's Liability Coverage contains an exclusion for an insured's liability arising out of the ownership or operation of a vehicle while it is being used during any period of time any insured is logged into a "transportation network platform" as a driver, whether or not a passenger is occupying the vehicle. Similar exclusions also apply to Medical Payments Coverage, Personal Injury Protection Coverage, Uninsured Motorists Coverage and Coverage For Damage To Your Auto.

"Transportation network platform" means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

You should:
- Review your Personal Auto Policy and any applicable TNC insurance policy carefully; and
- Contact your insurance agent or broker to discuss potential gaps in insurance coverage under your policy and the TNC policy which may arise while participating as a TNC driver.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

This endorsement changes the policy.
Please read it carefully.



# Texas Amendatory Endorsement

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

**I.**   Definition **A.** is replaced by the following:

    **A.**   Throughout this policy, "you" and "your" refer to:

        **1.**   The named insured shown in the Declarations; and

        **2.**   The spouse of a named insured if residing in the same household at the time of the loss.

        If the spouse ceases to be a resident of the same household during the policy period, the spouse will be considered "you" and "your" under this policy during a period of separation in contemplation of divorce and only until the effective date of another policy listing the spouse as a named insured.

**II.**   Definition **D.** is replaced by the following:

    **D.**   "Auto" means a "motor vehicle":

        **1.**   Of the private passenger, pickup body, or cargo van type;

        **2.**   With at least four wheels; and

        **3.**   With a gross vehicle weight rating of 25,000 pounds or less that is not used for the delivery or transportation of goods, materials, or supplies, other than samples, unless:

            **a.**   the delivery of the goods, materials, or supplies is not the primary use for which the vehicle is employed; or

            **b.**   the vehicle is used for farming or ranching.

**III.**   Definition **M.** is replaced by the following:

    **M.**   "Newly acquired auto":

        **1.**   "Newly acquired auto" means an "auto" you become the owner of during the policy period.

        **2.**   Coverage for a "newly acquired auto" is provided as described below. If you ask us to insure a "newly acquired auto" after a specified time period described below has elapsed, any coverage we provide for a "newly acquired auto" will begin at the time you request the coverage.

            **a.**   For any coverage provided in this policy except Coverage For Damage To Your Auto, a "newly acquired auto" will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner. However, for this coverage to apply to a "newly acquired auto" which is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 20 days after you become the owner.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

If a "newly acquired auto" replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

**b.** Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must:

**(1)** Ask us to insure it within 20 days of becoming the owner if the Declarations indicate that Collision Coverage applies to at least one "auto". In this case, the "newly acquired auto" will have the broadest coverage we now provide for any "auto" shown in the Declarations.

**(2)** Ask us to insure it as soon as you would like coverage to begin if the Declarations do not indicate that Collision Coverage applies to at least one "auto". You will have no Collision Coverage until you notify us of the "newly acquired auto".

**c.** Comprehensive Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must:

**(1)** Ask us to insure it within 20 days of you becoming the owner if the Declarations indicate that Comprehensive Coverage applies to at least one "auto". In this case, the "newly acquired auto" will have the broadest coverage we now provide for any "auto" shown in the Declarations.

**(2)** Ask us to insure it as soon as you would like coverage to begin if the Declarations do not indicate that Comprehensive Coverage applies to at least one "auto". You will have no Comprehensive Coverage until you notify us of the "newly acquired auto".

**IV.** The following **Definitions** are added:

**N.** Throughout the policy, "minimum limits" refers to the following limits of liability as required by Texas law, to be provided under a policy of automobile insurance:

**1.** $30,000 for each person, subject to $60,000 for each accident, with respect to "bodily injury"; and

**2.** $25,000 for each accident with respect to "property damage".

**O.** "Business day" means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

**P.** "Temporary vehicle" includes a vehicle that is loaned or provided to an "insured" by an automobile repair facility for the "insured's" use while the "insured's" vehicle is at the facility for service, repair, maintenance, or damage or to obtain an estimate and is:

**1.** In the lawful possession of the "insured" or resident relative of the "insured";

**2.** Not owned by the "insured", any resident relative of the "insured" or any other person residing in the "insured's" household; and

**3.** Operated by or in the possession of the "insured" or resident relative of the "insured" until the vehicle is returned to the repair facility.

**V.** **Part A – Liability Coverage**, **Insuring Agreement**, paragraph **B.**, item **2.** is replaced by the following:

**2.** Any person using "your covered auto" who is not insured for liability coverage by any other insurance policy, self-insurance program, or financial responsibility bond with respect to a motor vehicle accident arising out of that person's use of "your covered auto" with permission of you or any "family member", and who is operating "your covered auto".

Includes copyrighted material of Insurance Services Office, Inc., with its permission

**VI.  Part A – Liability Coverage, Exclusions, A.3.** is replaced by the following:

We do not provide Liability Coverage for any "insured":

**3.**  For "property damage" to property:

    **a.**  Rented to;

    **b.**  Used by; or

    **c.**  In the care of;

that "insured".

This exclusion **(3.A.)** does not apply to:

    **a.**  "Property damage" to a residence or private garage; or

    **b.**  Any "temporary vehicle" provided to you, any "family member" or any other licensed operator residing in your household that is:

        **(1)**  A private passenger auto; or

        **(2)**  A pickup, utility vehicle or van that has a Gross Vehicle Weight Rating of 14,000 lbs. or less that:

            **(a)**  Is not used primarily for the delivery or transportation of good, materials or supplies, other than samples; or

            **(b)**  Is used for farming or ranching.

However, we do not provide Liability Coverage for "property damage" to such "temporary vehicle" if you are convicted in a case brought against you under the Texas Controlled Substances Act or the federal Controlled Substances Act and the "temporary vehicle" is seized by federal or state law enforcement officers as evidence in such case.

**VII. Part A – Liability Coverage, Exclusions, A.5.** is replaced by the following:

We do not provide Liability Coverage for any "insured":

**5.**  For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used:

    **a.**  As a public or livery conveyance.  This paragraph (a.) does not apply:

        **(1)**  While the vehicle is being used by you or a "family member" to deliver good, items or products unless the vehicle is used primarily for the delivery of goods, items or products; or

        **(2)**  To any "temporary vehicle" provided to you, any "family member" or any other licensed operator residing in your household that is:

            **(a)**  A private passenger auto; or

            **(b)**  A pickup, utility vehicle or van that has a Gross Vehicle Weight Rating of 14,000 lbs. or less that:

                **(i)**  Is not used primarily for the delivery or transportation of goods, materials or supplies, other than samples; or

                **(ii)**  Is used for farming or ranching.

Exclusion **A.5** does not apply to a shared expense car pool.

**VIII. Part A – Liability Coverage, Other Insurance** is replaced by the following:

**Other Insurance**

If there is other applicable liability insurance, we will pay only our share of the loss.  Our share is the proportion that our limit of liability bears to the total of all applicable limits.  Any insurance we provide for a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any other collectible insurance.  However, we will provide primary insurance for a "temporary vehicle" provided to you, any "family member" or any other licensed operator residing in your household that is:

**1.**  A private passenger auto; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission

**2.** A pickup, utility vehicle or van that has a Gross Vehicle Weight Rating of 14,000 lbs. or less that:

    **a.** Is not used primarily for the delivery or transportation of goods, materials or supplies, other than samples; or

    **b.** Is used for farming or ranching.

**IX.** The following is added to the **Part B – Medical Payments Coverage**, **Limits of Liability** provision:

No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Personal Injury Protection Coverage.

**X.** The following provision is added to **Part B – Medical Payments Coverage**:

**Assignment Of Payments**

**1.** An "insured" may assign, in writing, payments of medical expenses for services provided to the "insured" that are covered under Part **B** of this Policy to a physician or other health care provider that furnished such services to the "insured".

**2.** If we receive an "insured's" written assignment of such payments, we will pay the medical expenses covered under Part **B** directly to the physician or other health care provider that furnished the services to the "insured".

**XI.** The following is added to **Part D – Coverage For Damage To Your Auto, Insuring Agreement**, paragraph **C.**:

However, "non-owned auto" does not include any "temporary vehicle" provided to you, any "family member" or any other licensed operator residing in your household that is:

**1.** A private passenger auto; or

**2.** A pickup, utility vehicle or van that has a Gross Vehicle Weight Rating of 14,000 lbs. or less that:

    **a.** Is not used primarily for the delivery or transportation of goods, materials or supplies, other than samples; or

    **b.** Is used for farming or ranching.

**XII. Part D – Coverage For Damage To Your Auto**, **Exclusions**, paragraph **6.** is replaced by the following:

**6.** A total loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities.

This Exclusion **(6.)** does not apply to the interests of Loss Payees in "your covered auto".

However, if you are convicted in a case brought against you under the Texas Controlled Substances Act or the federal Controlled Substances Act, we will not pay for any loss to "your covered auto" or "non-owned auto" that is seized by federal or state law enforcement officers as evidence in such case.

**XIII.Part D – Coverage For Damage To Your Auto**, **Limit Of Liability**, paragraph **C.** is replaced by the following:

**C.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment, unless betterment is the result of like parts being unavailable.

**XIV.** The **Loss Payable Clause** of **Part D – Coverage For Damage to Your Auto** is replaced by the following:

**Loss payable clause**

Includes copyrighted material of Insurance Services Office, Inc., with its permission

Payment under this Part D for a loss to "your covered auto" will be made according to your interest and the interest of any lienholder shown on the declarations page or designated by you. At our option, payment may be made to both jointly, or to either separately. However, if "your covered auto" is not a total loss, we may make payment to you and the repairer of the "auto".

The lienholder's interest will not be protected:

**1.** Where fraud, misrepresentation, material omission, or intentional damage resulting in a denial of coverage by us has been committed by or at the direction of you or any person seeking coverage; or

**2.** Where the loss is otherwise not covered under the terms of this policy.

If this policy is cancelled, rescinded, or non-renewed, the interest of any lienholder under this agreement will also terminate.

**XV. Part E – Duties After An Accident Or Loss**, paragraph **B.**, item **3.** is replaced by the following:

**3.** Submit, as often as we reasonably require:

**a.** To physical exams by physicians we select. We will pay for these exams.

**b.** To examination under oath and subscribe the same. A parent or guardian may be present during any examination of a minor.

**XVI. Part E – Duties After An Accident Or Loss**, paragraph **B.**, item **4.** is replaced by the following:

**4.** Authorize us to obtain:

**a.** Medical reports; and

**b.** Other pertinent records.

The medical reports must be reasonably related to the accident or loss.

**XVII. Part F – General Provisions**, **Fraud** is replaced by the following:

**Fraud**

This policy was issued in reliance upon the information provided on your insurance application. Material information provided on your insurance application includes, but is not limited to, the following information: license and driving history of you, relatives, and all persons of driving age residing in your household; the description of the vehicles to be insured; the location of the principal place of garaging; and your place of residence. At any time, we may rescind this policy, including after the occurrence of an accident or loss, if you are found to have:

**1.** Made incorrect statements or representations to us with regard to any material fact or circumstance;

**2.** Concealed or misrepresented any material fact or circumstance; or

**3.** Engaged in fraudulent conduct;

at the time of application. This means that we will not be liable for any claims or damages that would be covered otherwise.

Any changes we make at your request to this policy after inception will be made in reliance upon information you provide. If you:

**1.** Make incorrect statements or representations to us with regard to any material fact or circumstance;

**2.** Conceal or misrepresent any material fact or circumstance; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission

**3.** Engage in fraudulent conduct;

in connection with a requested change we may rescind the policy or reform it as it existed immediately prior to the requested change. We may do this at any time, including after the occurrence of an accident or loss.

However, this shall not affect coverage under **Part A – Liability Coverage** of this policy up to the minimum required limits by the financial responsibility law in your state for an accident that occurs before we notify the "named insured" that the policy has been rescinded. If we rescind this policy, you must reimburse us if we make any payment.

If we rescind this policy, it will be rescinded from its inception, as if the policy never took effect.

When we have not rescinded or reformed the policy, we may still deny coverage for an accident or loss if you, in connection with the policy application, in connection with any requested change, or at any time during the policy period, have concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct and that concealment, misrepresentation, or fraudulent conduct was material to a risk assumed by us.

We may deny coverage for an accident or loss if you or a person seeking coverage has concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

**XVIII. Part F – General Provisions**, Payment of Premium and Fees is replaced by the following:

**Payment of premium and fees**

If your initial premium payment is by check, draft, electronic funds transfer, or similar form of remittance, coverage under this policy is conditioned upon payment to us by the financial institution. If the financial institution upon presentment does not honor the check, draft, electronic funds transfer, or similar form of remittance, this policy may, at our option, be deemed rescinded from its inception, as though the policy never took effect. This means we will not be liable under this policy for any claims or damages that would otherwise be covered if the check, draft, electronic funds transfer, or similar form of remittance had been honored by the financial institution. Any action by us to present the remittance for payment on more than one occasion shall not affect our right to rescind this policy.

Fees may be charged on your policy in addition to premium. We may charge fees for installment payments, late payments, and other transactions. Payments made on your policy will be applied first to fees, then to premium due.

**XIV. Part F – General Provisions**, **Termination** is replaced by the following:

**A. Cancellation**

This policy may be cancelled during the policy period as follows:

**1.** The "named insured" shown in the Declarations may cancel by:

   **a.** Returning this policy to us; or

   **b.** Giving us advance written notice of the date cancellation is to take effect.

**2.** We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

   **a.** At least 10 days notice:

     **(1)** If cancellation is for nonpayment of premium; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission

  **(2)** If notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

 **b.** At least 20 days notice in all other cases.

**3.** After this policy is in effect for more than 59 days, or if this is a renewal or continuation policy, we will cancel only:

 **a.** For nonpayment of premium; or

 **b.** If your driver's license or that of:

  **(1)** Any driver who lives with you; or

  **(2)** Any driver who customarily uses "your covered auto";

 has been suspended or revoked. This must have occurred:

  **(1)** During the policy period; or

  **(2)** Since the last anniversary of the original effective date if the policy period is other than 1 year.

 However, in the event you or a driver described in 4.b. above has had his or her driver's license suspended or revoked, before canceling this policy we will offer to continue the policy with a provision excluding coverage when the person who has had his or her driver's license suspended or revoked is operating "your covered auto". If such offer is accepted by you, we will issue an endorsement to that effect; or

 **c.** If the Texas Department of Insurance determines that continuation of the policy would result in a violation of the Texas Insurance Code or any other law governing the business of insurance in Texas.

**B. Nonrenewal**

If we decide not to renew or continue this policy, we will mail notice to the "named insured" shown in the Declarations at the address shown in this policy. Notice will be mailed at least 30 days before the end of the policy period. We will have the right not to renew or continue it only at each one year anniversary of its original effective date.

However, we will not refuse to renew or continue this policy solely because:

**1.** Of the age of you or any "family member"; or

**2.** You are an elected official.

**C. Automatic Termination**

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**D. Other Termination Provisions**

**1.** We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

**2.** If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund due not later than the 15th "business day" after the effective date of cancellation.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

The premium refund, if any, will be computed pro rata, subject to the policy minimum premium. However, making or offering to make the refund is not a condition of cancellation.

**3.** The effective date of cancellation stated in the notice shall become the end of the policy period.

**XV.** The following provisions are added to **Part F – General Provisions**:

**Payment Of First-Party Claims**

**1.** Within 15 days after we receive written notice of a claim, we will:

**a.** Acknowledge receipt of the claim. If our acknowledgement of the claim is not in writing, we will keep a record of the date, method and content of our acknowledgement.

**b.** Begin any investigation of the claim.

**c.** Specify the information that the person making the claim must provide in accordance with Paragraph **B.** of Part **E.**

We may request more information if, during the investigation of the claim, such additional information is necessary.

**2.** After we receive all information we request, we will notify the person making the claim, in writing, whether the claim will be paid or has been denied, or whether more time is needed. We will notify the person making the claim:

**a.** Within 15 "business days"; or

**b.** Within 30 days if we have reason to believe the loss resulted from arson.

**3.** If we deny the claim or require more time for processing the claim, we must:

**a.** Give the reasons for denying the claim; or

**b.** Give the reasons we require more time to process the claim. However, we must either approve or deny the claim within 45 days after the date we notify the person making the claim that more time is needed.

**4.** In the event of a weather-related catastrophe or major natural disaster, as defined by the Texas Department of Insurance, the claim-handling deadlines as stated above in this provision are extended for an additional 15 days.

**5.** If we notify the person making the claim that we will pay the claim, or part of the claim, we will pay the claim within five "business days" after we notify that person.

**6.** If payment of the claim or part of the claim requires the performance of an act by the person making the claim, we will pay the claim within five "business days" after the date that person performs the act.

**Notice of Settlement Of Liability Claims**

**1.** We will notify the "named insured", in writing, of any initial offer to compromise or settle a claim against an "insured" under Part **A** – Liability Coverage of this policy. We will give the "named insured" notice within 10 days after the date the offer is made.

**2.** We will notify the "named insured", in writing, of any settlement of a claim against an "insured" under Part **A** – Liability Coverage of this policy. We will give the "named insured" notice within 30 days after the date of the settlement.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

| **IMPORTANT NOTICE** | **AVISO IMPORTANTE** |
|---|---|
| To obtain information or make a complaint: | Para obtener informacion o para someter una queja: |
| You may call our toll-free telephone number for information or to make a complaint at: | Usted puede llamar al numero de telefono gratis para informacion o para someter una queja al: |
| **866-980-9431** | **866-980-9431** |
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al: |
| **1-800-252-3439** | **1-800-252-3439** |
| You may write the Texas Department of Insurance: | Puede escribir al Departamento de Seguros de Texas: |

P. O. Box 149104
Austin, TX  78714-9104
Fax:  (512) 490-1007
Web: www.tdi.texas.gov
E-mail:  ConsumerProtection@tdi.texas.gov

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**
This notice is for information only and does not become a part or condition of the attached document.

P. O. Box 149104
Austin, TX  78714-9104
Fax:  (512) 490-1007
Web: www.tdi.texas.gov
E-mail:  ConsumerProtection@tdi.texas.gov

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**
Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

**UNA ESTE AVISO A SU POLIZA:**
Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del document adjunto.

Form 03, Texas, August 2017

This endorsement changes the policy.
Please read it carefully.



# Lyft on Us Endorsement

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

Through the "Lyft on Us" program, each policyholder will receive free Lyft rides on St. Patrick's Day, Independence Day, and New Year's Eve. Before each holiday described, each policyholder will be emailed a Lyft code for 2 free rides up to $10 each, a maximum value of $20.

"Policyholder" as used in this endorsement means each driver listed on the "declarations page".

This endorsement changes the policy.
Please read it carefully.



# Texas Personal Injury Protection Coverage

I.   Definitions

The **Definitions** Section is amended as follows:

A.   The following definitions are replaced:

1.   "Family member" means a person related to the "named insured" by blood, marriage or adoption who is a resident of the "named insured's" household. This includes a ward or foster child.

If the spouse of the "named insured" ceases to be a resident of the same household during the policy period, the spouse will be considered a "family member" under this endorsement during a period of separation in contemplation of divorce and only until the effective date of another policy listing the spouse as a "named insured".

2.   "Your covered auto" means a "motor vehicle" owned by the "named insured":

a.   To which the bodily injury liability coverage of this policy applies and for which a specific premium is charged; and

b.   For which the "named insured" is required by the Texas Motor Vehicle Safety Responsibility Act to maintain financial responsibility.

B.   The following definitions are added:

1.   "Motor vehicle" means a:

a.   Self-propelled vehicle designed for use on a highway;

b.   Trailer or semitrailer designed for use with a self-propelled vehicle; or

c.   Vehicle propelled by electric power obtained from overhead wires, but not operated on rails.

However, "motor vehicle" does not include:

a.   Traction engines;

b.   Road rollers or graders;

c.   Tractor cranes;

d.   Power shovels;

e.   Well drillers; or

f.   Implements of husbandry.

2.   "Named insured" means the person named in the Declarations.

C.   "Insured" as used in this endorsement means:

1.   The "named insured" or any "family member":

Includes copyrighted material of Insurance Services Office, Inc., with its permission

      **a.** While "occupying"; or

      **b.** When struck by;

     a "motor vehicle".

  **2.** Any other person while "occupying" "your covered auto" with your permission.

**II.** Personal Injury Protection Coverage

**Insuring Agreement**

**A.** **If you pay a premium for this coverage,** we will pay, in accordance with the Texas Insurance Code, personal injury protection benefits to an "insured" who sustains "bodily injury". The "bodily injury" must:

  **1.** Result from an accident with a "motor vehicle"; and

  **2.** Arise out of the ownership, maintenance or use of a "motor vehicle".

**B.** Subject to the limits shown in the Declarations, personal injury protection benefits consist of the following:

  **1.** **Medical And Funeral Expenses**

    Payment for all reasonable expenses incurred within three years from the date of the accident for necessary:

    **a.** Medical, surgical, X-ray and dental services, including prosthetic devices;

    **b.** Ambulance, hospital, professional nursing and funeral services; and

    **c.** Services for remedial treatment and care rendered in accordance with a recognized religious healing method.

  **2.** **Loss Of Income**

    **a.** 80% of an "insured's" loss of income from employment, provided that, at the time of the accident, the "insured":

      **(1)** Was an income producer; and

      **(2)** Was in an occupational status.

    These benefits do not apply to any loss after the "insured" dies.

    **b.** Loss of income is the difference between:

      **(1)** Income which would have been earned had the "insured" not been injured; and

      **(2)** The amount of income actually received from employment during the disability.

    **c.** If the income being earned as of the date of the accident is a salary or fixed remuneration, it shall be used in determining the amount of income which would have been earned. Otherwise, the average monthly income earned during the period, not to exceed 12 months, before the date of the accident, shall be used.

  **3.** **Replacement Services**

    Reasonable expenses incurred for obtaining services that replace those an "insured" would normally have performed:

    **a.** Without pay;

    **b.** During a period of disability; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission

   c.   For the care and maintenance of the family or household.

These benefits apply only if, at the time of the accident, the "insured":

   a.   Was not an income producer; and

   b.   Was not in an occupational status.

These benefits do not apply to any loss after the "insured" dies.

If a lapse occurs:

1.   In the period of total disability; or

2.   In the medical treatment;

of an "insured" who has received medical and funeral expenses benefits under **B.1.** or loss of income benefits under **B.2.** above, and that "insured" subsequently claims additional benefits based upon a recurrence of the "bodily injury" for which the original claim for benefits was made, that "insured" must provide us with reasonable proof of the recurrence of the "bodily injury". However, in no event shall the maximum limit for the total of all personal injury protection benefits payable to any "insured" exceed the maximum limit for the total of all personal injury protection benefits shown in the Declarations.

## Exclusions

A.   We do not provide Personal Injury Protection Coverage for any "insured" for "bodily injury" sustained:

   1.   In an accident caused intentionally by that "insured".

   2.   By that "insured" while in the commission of a felony.

   3.   By that "insured" while attempting to elude arrest by a law enforcement official.

   4.   While a "motor vehicle" is being used:

      a.    As a public or livery conveyance; or

      b.   For retail or wholesale delivery, including but not limited to, the pickup, transport, or delivery of magazines, newspapers, mail or food.

         Paragraphs **a.** and **b.** do not apply while the vehicle is being used by you or any "family member" unless the primary usage of the vehicle is to carry property for a fee.

      c.   During any period of time any "insured" is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle.

B.   We do not provide Personal Injury Protection Coverage for "bodily injury" sustained by:

   1.   The "named insured" or any "family member" as a result of the use or operation of any "motor vehicle", other than "your covered auto", owned by the "named insured".

   2.   Any "family member" as a result of the use or operation of any "motor vehicle" which is owned by that "family member" and for which the financial responsibility required by the Texas Motor Vehicle Safety Responsibility Act is not in effect.

## Limit Of Liability

The Limit Of Liability shown in the Declarations for Personal Injury Protection Coverage is our maximum limit of liability for each "insured" injured in any one accident. This is the most we will pay regardless of the number of:

Includes copyrighted material of Insurance Services Office, Inc., with its permission

1. "Insureds";
2. Claims made;
3. "Your covered autos" or premiums shown in the Declarations; or
4. "Your covered autos" involved in the accident.

### Other Insurance

If there is other Personal Injury Protection Insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any other collectible Personal Injury Protection Insurance.

III. **Part E – Duties After An Accident Or Loss**

Duty **B.5.** is replaced by the following:

Submit a proof of loss when required by us no later than six months after the date of the accident.

IV. **Part F – General Provisions**

Part **F** is amended as follows:

A. The following is added to the **Our Right To Recover Payment** provision:

However, our rights under Paragraphs **A.** and **B.** only apply against a person causing or contributing to the accident if, on the date of loss, the minimum limits required by Texas law have not been established for a motor vehicle involved in the accident and operated by that person.

B. The following provisions are added:

### Loss Payments

Benefits are payable:

1. No more frequently than every two weeks; and
2. Within 30 days after satisfactory proof of claim is received.

### Assignment Of Payments

1. An "insured" may assign, in writing, payments of medical expenses for services provided to the "insured" that are covered under this endorsement to a physician or other health care provider that furnished such services to the "insured".
2. If we receive an "insured's" written assignment of such payments, we will pay the medical expenses covered under this endorsement directly to the physician or other health care provider that furnished the services to the "insured".

Includes copyrighted material of Insurance Services Office, Inc., with its permission

This endorsement changes the policy.
Please read it carefully.



# Additional Insured -Lessor

Any liability and any required no-fault coverages afforded by this policy for "your leased auto" also apply to the lessor named in the Declarations as an additional insured. This insurance is subject to the following additional provisions:

1. We will pay damages for which the lessor becomes legally responsible only if the damages arise out of acts or omissions of:

   (a) you or any "family member", or

   (b) any other person except the lessor or any employee or agent of the lessor using "your leased auto".

2. "Your leased auto" means:

   (a) an auto shown in the Declarations or in this endorsement which you lease for a continuous period of at least six months under a written agreement which requires you to provide primary insurance for the lessor, and

   (b) any substitute or replacement auto furnished by the lessor named in this endorsement.

3. If we terminate this policy, notice will also be mailed to the lessor.

4. The lessor is not responsible for payment of premiums.

5. The designation of the lessor as an additional insured shall not operate to increase our limits of liability.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

This endorsement changes the policy.
Please read it carefully.



# Personal Vehicle Sharing Program Exclusion Endorsement

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

I.   **Part A – Liability Coverage**

Part **A** is amended as follows:

The following exclusion is added:

We do not provide Liability Coverage for the ownership, maintenance or use of:

"Your covered auto" while it is:

**a.**   Enrolled in a personal vehicle sharing program under the terms of a written agreement; and

**b.**   Being used in connection with such personal vehicle sharing program by anyone other than you or any "family member".

II.   **Part B – Medical Payments Coverage**

Part **B** is amended as follows:

The following exclusion is added:

We do not provide Medical Payments Coverage for any "insured" for "bodily injury":

Sustained while "occupying", or when struck by, "your covered auto" while it is:

**a.**   Enrolled in a personal vehicle sharing program under the terms of a written agreement; and

**b.**   Being used in connection with such personal vehicle sharing program by anyone other than you or any "family member".

III.   **Part C – Uninsured Motorists Coverage**

Part **C** is amended as follows:

The following exclusion is added:

We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

By any "insured" while "occupying", or when struck by, "your covered auto" while it is:

**a.**   Enrolled in a personal vehicle sharing program under the terms of a written agreement; and

**b.**   Being used in connection with such personal vehicle sharing program by anyone other than you or any "family member".

IV.   **Part D – Coverage For Damage To Your Auto**

Part **D** is amended as follows:

Includes copyrighted material of Insurance Services Office, Inc., with its permission

The following exclusions are added:

We will not pay for:

Loss to "your covered auto" which occurs while it is:

**a.** Enrolled in a personal vehicle sharing program under the terms of a written agreement; and

**b.** Being used in connection with such personal vehicle sharing program by anyone other than you or any "family member".

Loss to, or loss of use of, a "non-owned auto" used by:

**a.** You; or

**b.** Any "family member";

in connection with a personal vehicle sharing program if the provisions of such a personal vehicle sharing program preclude the recovery of such loss or loss of use, from you or that "family member", or if otherwise precluded by any state law.

**V.** Underinsured Motorist Coverage Endorsement

If the Underinsured Motorists Coverage Endorsement is attached to the policy, the following exclusion is added:

We do not provide Underinsured Motorists Coverage for "bodily injury" sustained:

By any "insured" while "occupying", or when struck by, "your covered auto" while it is:

**a.** Enrolled in a personal vehicle sharing program under the terms of a written agreement; and

**b.** Being used in connection with such personal vehicle sharing program by anyone other than you or any "family member".

.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

This endorsement changes the policy.
Please read it carefully.



# Personal Vehicle Sharing Program Revision Advisory Notice to Policyholders

This is a summary of the changes in your Personal Auto Policy. No coverage is provided by this summary nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this summary, **THE PROVISIONS OF THIS POLICY SHALL PREVAIL.**

The areas within the Policy that describe coverage are highlighted below. We have followed the policy sequence of provisions in setting out this material.

### PP 23 16 10 13 – PERSONAL VEHICLE SHARING PROGRAM EXCLUSION ENDORSEMENT

I.   Part A – Liability Coverage
     We have excluded Liability Coverage while "your covered auto" is enrolled in a personal vehicle sharing program under the terms of a written agreement and being used in connection with such program by individuals other than you or any family member.

II.  Part B – Medical Payments Coverage
     We have excluded Medical Payments Coverage for "bodily injury" sustained by anyone other than you or any family member while occupying, or when struck by, "your covered auto" while it is enrolled in a personal vehicle sharing program under the terms of a written agreement and being used in connection with such program.

III. Part C – Uninsured Motorists Coverage
     We have excluded Uninsured Motorists Coverage for "bodily injury" sustained by anyone other than you or any family member while occupying, or when struck by, "your covered auto" while it is enrolled in a personal vehicle sharing program under the terms of a written agreement and being used in connection with such program.

IV.  Part D – Coverage For Damage To Your Auto
     We have excluded Physical Damage Coverage for loss to "your covered auto" which occurs while it is enrolled in a personal vehicle sharing program under the terms of a written agreement and being used in connection with such program by individuals other than you or any family member.
     We have excluded Physical Damage Coverage for loss to, or loss of use of, a non-owned automobile while being used by you or any family member in connection with a personal vehicle sharing program if the provisions of such a personal vehicle sharing program preclude the recovery of such loss or loss of use, from you or that family member, or if otherwise precluded by any state law.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

V.  Underinsured Motorist Coverage Endorsement

We have excluded Underinsured Motorists Coverage for "bodily injury" sustained by anyone other than you or any family member while occupying, or when struck by, "your covered auto" while it is enrolled in a personal vehicle sharing program under the terms of a written agreement and being used in connection with such program.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

This endorsement changes the policy.
Please read it carefully.



# Uninsured Motorists Coverage - Texas

I.   **Part C – Uninsured Motorists Coverage**

Part **C** is replaced by the following:

**Insuring Agreement**

We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of:

1.   "Bodily injury" sustained by an "insured" and caused by an accident; and

2.   "Property damage" caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

Any judgment for damages arising out of a suit brought without our consent is not binding on us. If we and you do not agree as to whether or not a vehicle is actually uninsured, the burden of proof as to that issue shall be on us.

"Insured" as used in this endorsement means:

1.   You or any "family member".

2.   Any other person "occupying" "your covered auto".

3.   Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

"Property damage" as used in this endorsement means injury to, or destruction of, or loss of use of:

1.   "Your covered auto", not including a temporary substitute auto.

2.   Any property owned by a person listed in 1. or 2. of the definition of an "insured" while contained in "your covered auto".

3.   Any property owned by you or any "family member" while contained in any auto not owned, but being operated, by you or any "family member".

"Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1.   To which no liability bond or policy applies at the time of the accident.

2.   To which a liability bond or policy applies at the time of the accident, but its limit of liability either:

   a.   Is not enough to pay the full amount the "insured" is legally entitled to recover as damages; or

   b.   Has been reduced by payment of claims to an amount which is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

3.   Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

Includes copyrighted material of Insurance Services Office, Inc., with its permission

    a.   You or any "family member";

    b.   A vehicle which you or any "family member" are "occupying"; or

    c.   "Your covered auto"

    But only if the "insured" or someone on his or her behalf, reports the accident to the police or civil authority within 24 hours or as soon as practicable after the accident.

4.   To which a liability bond or policy applies at the time of the accident, but the bonding or insuring company:

    a.   Denies coverage; or

    b.   Is or becomes insolvent.

5.   Which is owned or operated by someone with diplomatic immunity.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1.   Owned by or furnished or available for the regular use of you or any "family member".

2.   Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3.   Owned by any governmental unit or agency unless:

    a.   The operator of the vehicle is uninsured; and

    b.   There is no statute imposing liability for damage because of "bodily injury" or "property damage" on the governmental body for an amount not less than the limit of liability for this coverage.

4.   Operated on rails or crawler treads.

5.   Designed mainly for use off public roads while not upon public roads.

6.   While located for use as a residence or premises.

## Exclusions

A.   We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by an "insured" or "family member" while "occupying", or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

B.   We do not provide Uninsured Motorists Coverage for "bodily injury" or "property damage" sustained by any "insured":

1.   Resulting from the intentional acts of that "insured".

2.   If that "insured" or the legal representative settles the "bodily injury" or "property damage" claim and such settlement prejudices our right to recover payment. However, this Exclusion B.2. does not apply to a settlement made with the insurer of a vehicle described in Paragraph 2. of the definition of "uninsured motor vehicle".

3.   Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion B.3. does not apply to a "family member" using "your covered auto".

4.   While "occupying" "your covered auto" when it is being used:

    a.   As a public or livery conveyance; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission

    b.  For retail or wholesale delivery, including, but not limited to, the pickup, transport or delivery of magazines, newspapers, mail or food.

        Paragraphs a. and b. do not apply while the vehicle is being used by you or any "family member" unless the primary usage of the vehicle is to carry property for a fee.

    c.  During any period of time any "insured" is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle.

        This Exclusion B.4. does not apply to a share-the-expense car pool.

  5.  For the first $250 of the amount of "property damage" to the property of that "insured" as the result of any one accident.

C.  This coverage shall not apply directly or indirectly to benefit:

  1.  Any insurer or self-insurer under any of the following or similar law:

    a.  Workers' compensation law; or

    b.  Disability benefits law.

  2.  Any insurer of property.

D.  We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

**Limit Of Liability**

A.  The limit of Bodily Injury Liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of Bodily Injury Liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. The limit of Property Damage Liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all "property damage" resulting from any one accident.

  This is the most we will pay regardless of the number of:

  1.  "Insureds";

  2.  Claims made;

  3.  Bonds or policies applicable;

  4.  Vehicles or premiums shown in the Declarations;

  5.  Vehicles involved in the accident.

  6.  Lawsuits brought; or

  7.  Policies issued by us.

B.  Subject to Paragraph A., our limit of liability will be the lesser of:

  1.  The difference between the amount of an "insured's" damages for "bodily injury" or "property damage" and the amount paid or payable to that "insured" for such damages by or on behalf of persons or organizations who may be legally responsible; and

  2.  The applicable limit of liability for this coverage.

C.  No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

Includes copyrighted material of Insurance Services Office, Inc., with its permission

    1.   Part A, Part B or Part D of this Policy; or

    2.   Personal Injury Protection Coverage.

D.  We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

E.  We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

    1.   Workers' compensation law; or

    2.   Disability benefits law.

F.  With respect to coverage under Paragraph 2. of the definition of "uninsured motor vehicle", we will reduce the "insured's" total damages by any amount available to that "insured", under any bodily injury liability bonds or policies applicable to the "uninsured motor vehicle", that such "insured" did not recover as a result of a settlement between that "insured" and the insurer of an "uninsured motor vehicle". However, any reduction of the "insured's" total damages will not reduce the limit of liability for this coverage.

This Paragraph F. shall not apply if we advance payment to the "insured" in an amount equal to the tentative settlement with the insurer of the "uninsured motor vehicle".

G.  For any "property damage" to which:

    1.   The Coverage For Damage To Your Auto of this policy or similar coverage from another policy; and

    2.   This coverage;

both apply, you may choose the coverage from which damages will be paid. If neither coverage is sufficient to pay the damages or loss, you may recover under both coverages, subject to the following:

    1.   You will pay the higher deductible. However, you do not have to pay both deductibles; and

    2.   You may not recover more than the actual damages or loss.

## Other Insurance

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided by this endorsement:

1.  Any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any collectible insurance providing such coverage on a primary basis.

2.  If the coverage under this policy is provided:

    a.  On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

    b.  On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

## Arbitration

Includes copyrighted material of Insurance Services Office, Inc., with its permission

A. If we and an "insured" do not agree:

1. Whether that "insured" is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that "insured";

from the owner or operator of an "uninsured motor vehicle", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

However, at any time before the arbitrators' decision, either party may revoke the agreement to arbitrate the matter.

### Additional Duties

A person seeking Uninsured Motorists Coverage under Paragraph 2. of the definition of "uninsured motor vehicle" must also promptly:

1. Send us copies of the legal papers if a suit is brought; and

2. Notify us in writing of a tentative settlement between the "insured" and the insurer of the "uninsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "uninsured motor vehicle".

### II. Part F – General Provisions

The following is added to the **Our Right To Recover Payment** Provision:

Our rights do not apply under Paragraph A. with respect to coverage under Paragraph 2. of the definition of "uninsured motor vehicle" if we:

1. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "uninsured motor vehicle"; and

2. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

1. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

2. We also have a right to recover the advance payment.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

This endorsement changes the policy.
Please read it carefully.



# Roadside Assistance Reimbursement Coverage

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

## Insuring Agreement

We will pay for the following services when necessary due to a "covered emergency":

1.  Towing of a "covered disabled auto"; and
2.  Labor on a "covered disabled auto" at the place of disablement.

Our maximum payment is $100 per disablement. All payments will be issued as reimbursements where coverage is afforded. Requests for reimbursement must be accompanied by an original itemized receipt and must be submitted within 60 days of service. There will be a limit of one reimbursement per disablement.

## Additional Definitions

When used in this endorsement:

1.  "Covered disabled auto" means "your covered auto" for which this coverage has been purchased that sustained a "covered emergency".
2.  "Covered emergency" means a disablement that is a result of:

    a.  Mechanical or electrical breakdown;
    b.  Battery failure;
    c.  Insufficient supply of fuel, oil, water, or other fluid;
    d.  Flat tire;
    e.  Lock-out; or
    f.  Entrapment in snow, mud, water or sand within 100 feet of a road or highway.

## Exclusions

Coverage under this endorsement will not apply to:

1.  More than three "covered emergencies" for any single "your covered auto" in a six-month period;
2.  The cost of purchasing parts, fluid, lubricants, fuel, or replacement keys, or the labor to make replacement keys;
3.  Installation of products or material not related to the disablement;
4.  Labor not related to the disablement;
5.  Labor on a "covered disabled auto" for any time period in excess of 60 minutes per disablement;

6.  Towing or storage related to impoundment, abandonment, illegal parking, or other violations of law;

7.  Assistance with jacks, levelers, airbags or awnings;

8.  Labor or repair work performed at a service station, garage, or repair shop;

9.  Auto storage charges;

10. Disablement that occurs on roads not regularly maintained, sand beaches, open fields, or areas designated as not passable due to construction, weather, or earth movement;

11. Mounting or removing of snow tires or chains;

12. Tire repair;

13. Disablement that results from an intentional or willful act or action by you, a relative, or the operator of a "covered disabled auto"; or

14. A trailer.

## Other Insurance

Any insurance provided under this endorsement for service rendered will be excess over any other collectible insurance or towing protection coverage.

This endorsement changes the policy.
Please read it carefully.



# Rental Reimbursement Coverage

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

When there is a loss to "your covered auto" described in the Declarations for which a specific premium charge indicates that Rental Coverage is afforded, we will reimburse rental charges incurred when you rent an "auto" from a rental agency or auto repair shop.

Additional fees or charges for insurance, damage waivers, optional equipment, fuel, or accessories are not covered.

If Rental Reimbursement Coverage applies, no other coverage under this policy for rental expenses will apply.

Rental charges will be reimbursed beginning:

1.  When "your covered auto" cannot be driven due to a loss; or
2.  If "your covered auto" can be driven, when you deliver "your covered auto" to an auto repair shop for repairs due to the loss;

And ending the earliest of:

1.  When "your covered auto" has been returned to "you";
2.  When "your covered auto" has been repaired;
3.  When "your covered auto" has been replaced;
4.  72 hours after "we" make an offer to settle the loss if "your covered auto" is deemed by "us" to be a total loss.

"You" must provide "us" with written proof of "your" rental charges to be reimbursed.



# E-Delivery Terms and Conditions

Revised: April 6, 2021

Please read these Terms and Conditions carefully. By voluntarily opting-in to electronic delivery of notices and documents, you are affirmatively consenting to these terms and conditions. If you disagree with these terms and conditions, do not check the box to continue.

These Terms and Conditions may change from time to time and all updates will be emailed to you, and it is your responsibility to review this information. When we do change these Terms and Conditions, we may also revise the "Revised" date and may notify you or post a message on the Website and/or through the Service.

Hardware Requirements: You will need to be able to access the Internet and have access to an Android or iOS smartphone.

Software Requirements: You will need to have iOS version 9.0 and above or Android version 5.0 and above.

We will inform you of any changes to these hardware and software requirements. You will need to review the new requirements and contact us should we make changes to the hardware or software requirements for the e-delivery option such that you may no longer be capable of accessing or retaining your electronic insurance documents.

You are responsible to inform us of any changes to your email address, as well as keeping your email address active and capable of receiving new emails. Your email address can be updated in the Root App at any time. We are not responsible for issues due to emails sent to inactive or out-of-date email address, unless we are solely negligent for using an incorrect address.

Your consent to these terms and conditions, confirms that you are consenting to receive all policies, endorsements, notices and/or documents from us electronically, including notice of nonrenewal and cancellation. However, there may be some documents that we continue to send via mail due to legal or technological constraints. You do have the right to request any of these documents in paper by contacting us at support@joinroot.com.

You can access your documents by tapping the policy tab in the app and tapping "Policy Document."

You can opt-out of e-delivery at any time by contacting us at support@joinroot.com.

I AGREE TO RECEIVE ALL MAILINGS AND COMMUNICATIONS ELECTRONICALLY. SUCH ELECTRONIC MAILING OR COMMUNICATIONS MAY EVEN INCLUDE CANCELLATION OR NONRENEWAL NOTICES.

I verify and confirm that I have read and agree to the document(s) above, that I own or lease the vehicle on this policy, and that I am the Named Insured on this policy and authorized to make the selections of coverage.

I understand that this constitutes a legal signature confirming that I acknowledge and agree to the above Affirmation Statement.

Acknowledged at: 2021-04-29 01:58:46 UTC

Acknowledged by: Christa Taylor, a331ba7d-c53b-46c3-ba45-31ace6e288f5



# Use of Credit Information Disclosure

We will obtain and use credit information on you or any other member(s) of your household as a part of the insurance credit scoring process.

If you have questions regarding this disclosure, contact Root Insurance at (866) 980-9431 or support@joinroot.com. For information or other questions, contact the Texas Department of Insurance at 1 (800) 578-4677 or PO Box 149104, MC 104-PC, Austin, Texas 78714.

Section 559.053 of the Texas Insurance Code requires an insurer or its agents to disclose to its customers whether credit information will be obtained on the applicant or insured or on any other member(s) of the applicant's or insured's household and used as part of the insurance credit scoring process.

If credit information is obtained or used on the applicant or insured, or on any member of the applicant's or insured's household, the insurer shall disclose to the applicant the name of each person on whom credit information was obtained or used and how each person's credit information was used to underwrite or rate the policy. An insurer may provide this information with this disclosure or in a separate notice.

Adverse effect means an action taken by an insurer in connection with the underwriting of insurance for a consumer that results in the denial of coverage, the cancellation or nonrenewal of coverage, or the offer to and acceptance by a consumer of a policy form, premium rate, or deductible other than the policy form, premium rate, or deductible for which the consumer specifically applied.

Credit information is any credit related information derived from a credit report itself, or provided in an application for personal insurance. The term does not include information that is not credit-related, regardless of whether the information is contained in a credit report or in an application for insurance coverage or is used to compute a credit score.

Credit score or insurance score is a number or rating derived from a mathematical formula, computer application, model, or other process that is based on credit information and used to predict the future insurance loss exposure of a consumer.

## SUMMARY OF CONSUMER PROTECTIONS CONTAINED IN CHAPTER 559

Includes copyrighted material of Insurance Services Office, Inc., with its permission

PROHIBITED USE OF CREDIT INFORMATION.

An insurer may not:

(1) use a credit score that is computed using factors that constitute unfair discrimination;

(2) deny, cancel, or nonrenew a policy of personal insurance solely on the basis of credit information without consideration of any other applicable underwriting factor independent of credit information; or

(3) take an action that results in an adverse effect against a consumer because the consumer does not have a credit card account without consideration of any other applicable factor independent of credit information.

An insurer may not consider an absence of credit information or an inability to determine credit information for an applicant for insurance coverage or insured as a factor in underwriting or rating an insurance policy unless the insurer:

(1) has statistical, actuarial, or reasonable underwriting information that: (A) is reasonably related to actual or anticipated loss experience; and (B) shows that the absence of credit information could result in actual or anticipated loss differences;

(2) treats the consumer as if the applicant for insurance coverage or insured had neutral credit information, as defined by the insurer; or

(3) excludes the use of credit information as a factor in underwriting and uses only other underwriting criteria.

NEGATIVE FACTORS.

An insurer may not use any of the following as a negative factor in any credit scoring methodology or in reviewing credit information to underwrite or rate a policy of personal insurance:

(1) a credit inquiry that is not initiated by the consumer;

(2) an inquiry relating to insurance coverage, if so identified on a consumer's credit report; or

(3) a collection account with a medical industry code, if so identified on the consumer's credit report.

Multiple lender inquiries made within 30 days of a prior inquiry, if coded by the consumer reporting agency on the consumer's credit report as from the home mortgage or motor vehicle lending industry, shall be considered by an insurer as only one inquiry.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

EFFECT OF EXTRAORDINARY EVENTS.

An insurer shall, on written request from an applicant for insurance coverage or an insured, provide reasonable exceptions to the insurer's rates, rating classifications, or underwriting rules for a consumer whose credit information has been directly influenced by a catastrophic illness or injury, by the death of a spouse, child, or parent, by temporary loss of employment, by divorce, or by identity theft. In such a case, the insurer may consider only credit information not affected by the event or shall assign a neutral credit score.

An insurer may also consider granting an exception to an applicant for insurance coverage or an insured for an extraordinary event not listed in this section. An insurer is not out of compliance with any law or rule relating to underwriting, rating, or rate filing as a result of granting an exception under this article.

NOTICE OF ACTION RESULTING IN ADVERSE EFFECT.

If an insurer takes an action resulting in an adverse effect with respect to an applicant for insurance coverage or insured based in whole or in part on information contained in a credit report, the insurer must provide to the applicant or insured within 30 days certain information regarding how an applicant or insured may verify and dispute information contained in a credit report.

DISPUTE RESOLUTION; ERROR CORRECTION.

If it is determined through the dispute resolution process established under Section 611(a)(5), Fair Credit Reporting Act (15 U.S.C. Section 1681i), as amended, that the credit information of a current insured was inaccurate or incomplete or could not be verified and the insurer receives notice of that determination from the consumer reporting agency or from the insured, the insurer shall re-underwrite and re-rate the insured not later than the 30th day after the date of receipt of the notice.

After re-underwriting or re-rating the insured, the insurer shall make any adjustments necessary within 30 days, consistent with the insurer's underwriting and rating guidelines. If an insurer determines that the insured has overpaid premium, the insurer shall credit the amount of overpayment. The insurer shall compute the overpayment back to the shorter of the last 12 months of coverage; or the actual policy period.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

I verify and confirm that I have read and agree to the document(s) above, that I own or lease the vehicle on this policy, and that I am the Named Insured on this policy and authorized to make the selections of coverage.

I understand that this constitutes a legal signature confirming that I acknowledge and agree to the above Affirmation Statement.

Acknowledged at: 2020-04-24 15:50:37 UTC

Acknowledged by: Christa Taylor, a331ba7d-c53b-46c3-ba45-31ace6e288f5

Includes copyrighted material of Insurance Services Office, Inc., with its permission



**Important Notice**

Root Insurance Company reserves the right to cancel this policy at any time in accordance with our underwriting guidelines.

In the event this occurs, you will be notified of the cancellation as required by your state laws and regulations.

If you have any questions, please contact Customer Service at support@joinroot.com.

I verify and confirm that I have read and agree to the document(s) above, that I own or lease the vehicle on this policy, and that I am the Named Insured on this policy and authorized to make the selections of coverage.

I understand that this constitutes a legal signature confirming that I acknowledge and agree to the above Affirmation Statement.

Acknowledged at: 2020-04-24 15:50:37 UTC

Acknowledged by: Christa Taylor, a331ba7d-c53b-46c3-ba45-31ace6e288f5